**UNITED STATES of America,**
**Appellant,**

v.

**Mabel Davis JAMES, Appellee.**

**No. 18456.**

United States Court of Appeals
Ninth Circuit.

June 18, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Richard M. Roberts, Michael K. Cavanaugh, John B. Jones, Attys., Dept. of Justice, Washington, D. C., Charles A. Muecke, U. S. Atty., Phoenix, Ariz., for appellant.

William Lee McLane, Jr., Nola McLane, Thaddeus Rojek, Phoenix, Ariz., for appellee.

Before CHAMBERS, POPE, BARNES, HAMLEY, JERTBERG, MERRILL, KOELSCH, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

The government asks us to overrule our decision in Buck v. McLaughlin, 9 Cir., 1931, 48 F.2d 135. An alternative ground of decision in that case was that a widow's allowance paid to her out of her husband's estate under court order, pursuant to California law, is not "income" within the meaning of Amendment XVI to the Constitution. The questions presented by this case are narrower. Here, the widow's allowance was ordered in an Arizona estate, and was expressly made payable out of the income of the estate. The estate had income ample to cover the payments ordered, and there is no evidence that the allowance was not in fact paid out of that income. Under these circumstances, we must presume that it was. The years in question are 1956 and 1957.

There are two questions that we must decide: Did Congress attempt to tax the widow under these circumstances? If so, was what she received income under the Constitution? We answer both questions in the affirmative.

Section 61 of the Internal Revenue Code of 1954 (26 U.S.C. § 61) [1] defines gross income as "all income from whatever source derived, including (but not limited to) the following items:

\* \* \* \* \* \*

(15) Income from an interest in an estate or trust."

It has been held that, by the enactment of the predecessor of this section, Congress intended "to exert in this field 'the full measure of its taxing power.'" (Commissioner v. Glenshaw Glass Co., 1955, 348 U.S. 426, 429, 75 S.Ct. 473, 476, 99 L.Ed. 483) Congress has specifically expressed in subsection (15) an intent to tax the estate's income. Has it expressed an intent to tax it to the widow rather than the estate, when a part of the estate's income was, by order of the court, transferred to her?

Congress has expressly enacted that "Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance." (Section 102(a)). But this provision does not exclude from "gross income" (1) the income from such property or, "(2) where the gift, bequest, devise, or inheritance is of income from property, the amount of such income." (Section 102(b) (1) and (2)). The section further provides: "Where, under the terms of the gift, bequest, devise, or inheritance, the payment \* \* \* thereof is to be made at intervals, then, to the extent that it is paid \* \* \* out of income from property, it shall be treated for purposes of paragraph (2) as a gift, bequest, devise, or inheritance of income from property. Any amount included in the gross income of a beneficiary under subchapter J shall be treated for purposes of paragraph (2) as a gift, bequest, devise, or inheritance of income from property."

The pertinent provisions of subchapter J, Part I of which deals with "Estates, Trusts and Beneficiaries," are: § 643(c) "For purposes of this part, the term 'beneficiary' includes heir, legatee, devisee." § 661(a) "Deduction.—In any taxable year there shall be allowed as a deduction in computing the taxable income of an estate \* \* \*

"(1) any amount of income \* \* \* required to be distributed currently (including any amount required to be distributed which may be paid out of income or corpus to the extent such amount is paid out of income form such taxable year); \* \* \*." § 662(a) "Inclusion.— Subject to subsection (b), there shall be included in the gross income of a beneficiary to whom an amount specified in section 661(a) is paid \* \* \* (by an estate \* \* \* described in section 661), the sum of the following amounts:

"(1) Amounts required to be distributed currently.—The amount of income for the taxable year required to be distributed currently \* \* \*." This "includes any amount required to be paid out of income or corpus to the extent such amount is paid out of income for such taxable year."

§ 662(b) "Character of amounts.—The amounts determined under subsection (a) shall have the same character in the hands of the beneficiary as in the hands of the estate \* \* \*."

The Treasury regulations (1954 Code) contain the following applicable provisions:

23 C.F.R., Sec. 1.102–1

"(d) Effect of subchapter J. Any amount required to be included in the gross income of a beneficiary under sections \* \* \* 662 \* \* \* shall be treated for the purposes of this section as a gift, bequest, devise or inheritance of income from property \* \* \*."

23 C.F.R. Sec. 1.661(a)–2

"(e) The terms 'income required to be distributed currently' and 'any other amounts properly paid or credited or required to be distributed' do not include amounts required to be paid by a decedent's estate pursuant to a court order or decree as an allowance or award under

1. All references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as it appears in 26 U.S.C., 1958 ed.

local law for the support of the decedent's widow or other dependent for a limited period during the administration of the estate, except to the extent such amounts are payable out of and chargeable to income under the order or decree or local law. * * * "

We have deliberately omitted any reference to those portions of the code and the regulations that establish the concept of "distributable net income" because here we deal with income of the estate actually paid to the widow, and those provisions deal with income that is treated as if paid to the beneficiary, even though it can be shown that the actual payment is from principal. We need not consider such provisions, and express no opinion as to their applicability to a widow's allowance.

The taxpayer's contention is that sections 643(c), 661(a), and 662(a) and (b) do not purport to tax, in the hands of the widow, that part of her allowance that is paid to her, by court order, out of estate income. She urges that the regulation (Sec. 1.661(a)–2, supra), to the extent that it may purport to do so, is invalid. Actually, the regulation deals with a deduction by the estate, not with taxability to the widow. Taken in connection with section 662, however, it implies that the income here in question is taxable to her.

■ The taxpayer says that the widow is not a "beneficiary" within the meaning of either the statute or the regulations, noting that the statute merely says that the term "includes heir, legatee, devisee," and that the widow is none of these. The taxpayer is also correct in stating that the mere fact that money received by A from B, (B in this case being the estate) comes from taxable income of B does not mean that A has received taxable income. Thus if B uses its income to pay the principal of a debt owing to A, A does not thereby receive taxable income.

■ Against these contentions, however, there are a number of considerations. First, there is the all-inclusive effect of section 61, as indicated by the Supreme Court in Glenshaw Glass Co., supra. When a person receives what would ordinarily be considered income, he is subject to tax unless Congress has said that he is not. Second, there is section 7701(b) of the code which reads:

"Definitions.

"(b) Includes and including.—The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined."

This materially weakens the taxpayer's argument as to the effect of section 643. We think that the widow's position is much closer to that of a "beneficiary" of the estate than to that, for example, of a creditor.[2] She gets the allowance only by reason of her husband's death; she is entitled to it because of her status as widow; she receives it from his estate. Third, there is the fact that section 102 does not expressly exclude from "gross income" the value of property acquired by the widow as family allowance. We leave to a more appropriate case the question of whether it does so by implication. But, even if it does, it would still not exclude income of the estate paid to her (§ 102 (b)).

■ Perhaps most persuasive is the general scheme of the statute, which contemplates taxation of the estate's income to it, when retained by it, and to a "beneficiary" when distributed to the "beneficiary," such payment being then deductible by the estate. (Again we need not discuss the concept of "distributable" income, other than to note that it is a means of implementing the scheme while eliminating the necessity of tracing dollars). On the whole, we conclude that the statute does tax to the widow income of the estate required to be paid and

---

2. Compare our discussion of family allowance and the estate tax in Cunha's Estate v. C. I. R., 9 Cir., 1960, 279 F.2d 292;

Jackson v. United States, 9 Cir., 1963, 317 F.2d 821.

actually paid to her as family allowance. We go no further than the facts of this case require.

The remaining question is whether Congress has power to tax to the widow the income of the estate required to be paid to, and received by, her as family allowance. We have no doubt that it does.

In Buck v. McLaughlin, supra, we held that money paid by an estate to a widow as her "family allowance" was not taxable to her as income. No differentiation was made between principal and income as the source of the allowance. No other Court of Appeals has passed upon the question, nor has the Supreme Court. Our decision was based upon alternative grounds. The first is that, the widow's right to a family allowance under California law being statutory, and the allowance being payable out of income or corpus regardless of any other right she may have in the estate, it was analogous to alimony, which had then been held not to be taxable income by the Supreme Court in Gould v. Gould, 1917, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211. The second was that, under the definition of "income" adopted by the Supreme Court in Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, the family allowance was not income within that term as used in the Sixteenth Amendment.

The Sixteenth Amendment uses, but does not purport to define, the term "income." Nor do the early income tax statutes attempt a comprehensive definition of the term. The Eisner definition is:

" 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets * * *." 252 U.S. at 207, 40 S.Ct. at 193.

On the same page, the Court sought to elucidate the principle thus expressed:

"Here we have the essential matter: *not* a gain *accruing to* capital; not a *growth* or *increment* of value

*in* the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, *severed from* the capital, however invested or employed, and *coming in*, being *'derived'*—that is, *received* or *drawn* by the recipient (the taxpayer) for his *separate* use, benefit and disposal;—*that* is income derived from property. Nothing else answers the description." (Emphasis by the Court)

At the time that the Buck case was decided, the Eisner definition might still have been thought to state good law. It had been frequently cited with approval by the Supreme Court in the decade following its formulation, though an analysis of results reached in the later cases might have suggested that it was most often honored in the breach.

But a few months after Buck, the Supreme Court hinted broadly that the definition had outlived its usefulness. The case was United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131. The question was whether a corporation which issued its own bonds at par, then repurchased at less than par on the open market, received income in the amount of the difference in price. Eisner v. Macomber was not cited. In holding the gain to be taxable income, Mr. Justice Holmes, for a unanimous Court said:

"We see nothing to be gained by discussion of judicial definitions. The defendant in error has realized within the year an accession to income, if we take words in their plain popular meaning, as they should be taken here." 284 U.S. at 3, 52 S.Ct. at 4.

This informal approach to the problem was consistent with Holmes' dissenting view in Eisner: "I think that the word 'income' in the Sixteenth Amendment should be read in 'a sense most obvious to the common understanding at the time of its adoption.' "

Mr. Justice Cardozo returned to the theme a few years later. Speaking for

the Court in United States v. Safety Car Heating & Lighting Co., 1936, 297 U.S. 88, 99, 56 S.Ct. 353, 358, 80 L.Ed. 500, he said:

"Income within the meaning of the Sixteenth Amendment is the fruit that is born of capital, not the potency of fruition. With few exceptions, if any, it is income as the word is known in the common speech of men."

The Eisner definition of income was expressly distinguished and limited for the first time in Helvering v. Bruun, 1940, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864. The taxpayer had leased certain property for a term of 99 years. The lease provided that the lessee should make certain improvements, which would revert to the lessor on termination of the lease. The lessee tore down an old building and built a new one. He then defaulted on the lease, and the property reverted to the taxpayer. The government sought to tax as income the net increase in fair market value of the new building over the old one. The taxpayer argued that, since the building had value only as "bricks, iron and mortar" if severed from the land, it was merely an accretion to capital, and not income. Mr. Justice Roberts noted that the taxpayer relied upon certain "expressions found in the decisions of this court dealing with the taxability of stock dividends." (Citing Eisner in a footnote). He distinguished them:

"These expressions, however, were used to clarify the distinction between an ordinary dividend and a stock dividend. They were meant to show that in the case of a stock dividend, the stockholder's interest in the corporate assets after receipt of the dividend was the same as, and inseverable from that which he owned before the dividend was declared. We think they are not controlling here." 309 U.S. at 469, 60 S.Ct. at 634.

The Eisner definition was finally laid to rest in Commissioner v. Glenshaw Glass Co., supra, which concerned the taxability as income of money recovered as punitive damages in legal actions. Appellees characterized the recovery of these funds as a "windfall." With commendable tenacity, they argued that the income provisions of the revenue code could not be read so broadly as to include these sums in income, because Eisner v. Macomber had defined income as the product of capital or labor, and these were neither.

Chief Justice Warren brushed the argument aside:

"The Court was there endeavoring to determine whether the distribution of a corporate stock dividend constituted a realized gain to the shareholder, or changed 'only the form, not the essence,' of his capital investment. * * * It was held that the taxpayer had 'received nothing out of the company's assets for his separate use and benefit. * * * The distribution, therefore, was held not a taxable event. In that context —distinguishing gain from capital— the definition served a useful purpose. But it was not meant to provide a touchstone to all future gross income questions. * * *

"Here we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. * * * * " (348 U.S. at 430–431, 75 S.Ct. at 476)

The latter language is clearly applicable to the case now before this Court.

Eisner v. Macomber is still good authority for the question that it decided, namely, that a stock dividend is not income to the shareholder, at least if the stock is of the same class and in the same corporation as that previously held by the taxpayer. But insofar as it purported to offer a comprehensive definition of the term income as used in the Sixteenth Amendment, it has been discarded. No Supreme Court case since Glenshaw Glass has cited it for its discussion of the income question.

A good summary of the situation may be found in Surrey and Warren, The Income Tax Project of the American Law Institute: Gross Income, Deductions, Accounting, Gains and Losses, Cancellation of Indebtedness, 66 Harv.L.Rev. 761, 770–71 (1953):

> "Essentially, the Eisner v. Macomber statement is a generalization rather than a definition.
>
> \*  \*  \*  \*  \*  \*
>
> "The Supreme Court has recognized the futility of attempting to capture the concept of income and confine it within a phrase. In United States v. Kirby Lumber Co. the Court explicitly abandoned the search for a definition, and succeeding cases have not revived the search. The courts have given a wide scope to the income tax, but have realized that the borderline content of 'income' must be determined case by case. Essentially the concept of income is a flexible one, with the result in a particular case being determined by the interplay of common usage, accounting concepts, administrative goals, and finally judicial reaction to these forces. Each force and judicial reaction in turn reflects an underlying judgment .as to what types of receipts should be subject to a tax imposed on 'income'."

To the same effect is 1 Mertens, Law of Federal Income Taxation § 5.03, (1962).

Clearly the constitutional basis for Buck v. McLaughlin has been discredited. It would seem just as clear that, under the modern concept of "income", there can be no constitutional barrier to taxing the widow's allowance, at least where the terms of the state court order provide that it be paid out of the income of the estate. That is all that is before us.

The alternative ground of the Buck case is no longer valid. Many courts, including this one, have determined that alimony is taxable to the recipient wife under present day statutes, and that Gould v. Gould was merely declarative of the law under older statutes, and did not have a constitutional basis. We think that the analogy that was drawn in Buck between alimony and family allowance is still a useful one. In upholding the tax on alimony payments to the wife, now expressly covered by section 61(8), we held that Congress had the power to require that the tax on the income shall fall on the ultimate recipient rather than the one who earned it. See Fairbanks v. Commissioner, 9 Cir., 1951, 191 F.2d 680, 681. That holding is equally applicable here.

To the extent that Buck v. McLaughlin is inconsistent with our decision in this case, and to that extent only, it is overruled. The judgment is reversed.