**SEVEN CANAL PLACE CORPORA-
TION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 397, Docket 28323.**

United States Court of Appeals
Second Circuit.

Argued April 8, 1964.

Decided May 26, 1964.

Casey, Lane & Mittendorf, New York City (Robert Beshar, New York City, of counsel), for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen. (Lee A. Jackson, Robert H. Anderson and Donald W. Williamson, Jr., Attys., Dept. of Justice), Washington, D. C., for respondent.

Before SWAN, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge.

Petitioner, Seven Canal Place Corporation, appeals from a decision of the Tax Court which allowed petitioner $5,-200 as a deduction for all officers' salaries for the tax year 1955 instead of $9,400 claimed in petitioner's 1955 re-

turn. As a result, a deficiency of $2,370 in tax was asserted by respondent.

For some years prior to 1955, petitioner owned two parcels of real property in the Bronx, one parcel, improved by a five-story commercial building, being used by the Beshar family rug business, the other parcel, with a three-story commercial building, being occupied by tenants. From 1947 through 1955 Herbert K. Beshar, his brother, Edward H. Breshar and Herbert's wife, Ella, had been paid salaries as officers of petitioner, totalling $9,200 (1947), $10,200 (1948–9), $12,000 (1950–54) and $9,400 (1955). Various services of a managerial nature were performed for this compensation.

Because of the Commissioner's objection that $12,000 was too high for the years 1951, 1952 and 1953, a compromise of $9,400 for these years was agreed upon and a similar figure was accepted for 1954. As a result, petitioner reported $9,400 for 1955. However, when the 1955 return was audited (1960), the Commissioner rejected the $9,400 as "excessive and unreasonable" and declared that $1,500 was the allowance for these three officers. The taxpayer quite naturally took exception to this appraisal of its officers' collective worth. Upon the trial in the Tax Court the Commissioner offered no proof in support of his figure. The Tax Court decided that petitioner should be able to run its business with a part-time $100 a week clerk and accordingly allowed petitioner a total salary allotment of $5,200.

Whatever basis the Commissioner had for its salary allowance of $1,500 was not then or even now revealed. Neither did the Tax Court satisfactorily explain how petitioner might properly run its business with a $100 a week part-time clerk or whether this was the going rate for a person competent to manage petitioner's buildings.

■ Many legal theories converge which becloud rather than clarify the atmosphere. Particularly in family controlled corporate situations, the courts must closely scrutinize salaries lest they be in reality a distribution of the taxpayer's earnings in the guise of salaries. There is also that "clearly erroneous" doctrine which if carried to its logical conclusion would eliminate any appellate review. However, if there be any reasonable foundation for the findings, they must be honored. On the other hand, despite the disinclination of the Commissioner to be bound by any rulings of his predecessors or even his own, it would be highly improper to suggest that his efforts to arrive at a fair compromise of $9,400 for the years 1950–53, which compromise was also accepted for 1954, were based upon a quixotic whim completely lacking in factual or legal support. Therefore, when the Tax Court finds that "The officers spent approximately the same amount of time on petitioner's affairs in 1955 as they had in 1951–53" it would seem as though the Commissioner might have had some reason, which he could support by proof, in justification of his cavalier reduction from $9,400 to $1,500 as the amount necessary for managerial salaries. True, the burden is on the taxpayer but the very findings of the Tax Court reveal many activities performed by the officers in 1955 for which a part-time clerk might not be adequate.*

---

* The Tax Court found that Herbert Beshar's duties on behalf of petitioner included:

"attempting to rent the vacant building and the normal inspections and maintenance necessary in operating an office or industrial building. These included showing the vacant building to prospective tenants, inspecting both buildings, estimating expenses of repair work in consultation with architects, maintenance of elevators and roofs, supervision of repairs, newspaper and circular advertising, conferences with brokers and prospects, interviewing prospective tenants, inspecting prospective tenants' existing premises and examination of their financial responsibility, conferences with petitioner's attorneys in relation to protests of real estate taxes and other matters, conferences with petitioner's accountants, examination of other buildings for possible investment by petitioner, and related duties."

■■ We do not decide that $5,200, $1,500 or $9,400 is the "reasonable allowance" as specified in the statute but it does seem that there should be some obligation once the taxpayer has produced proof of work done, compensation for comparable service and acceptance thereof by the Commissioner to show that it was all a great mistake. If mistake it were, of course, the Commissioner is not bound but it makes for better due process to show some reason for the mistake under these particular circumstances. Cf. Swed Distributing Co. v. C. I. R., 5 Cir., 1959, 272 F.2d 330.

Remanded for further proof and findings.

Edward Beshar, the Tax Court found, acted as Superintendent when Herbert was not available, and was in charge of the watchman service for both buildings.

Ella Beshar was found to have worked with Herbert in securing tenants, arranged for insurance and looked after the appearance of the buildings.