Robert R. WALKER and Wanda A. Walker, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

ROBERT R. WALKER, INC., Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 15323, 15324.

United States Court of Appeals
Seventh Circuit.

May 23, 1966.

Rehearing Denied June 24, 1966.

Certiorari Denied Oct. 10, 1966.

See 87 S.Ct. 124.

Merle H. Miller, Kenneth Foster, Alan H. Lobley, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for appellants.

Richard M. Roberts, Howard J. Feldman, Tax Division, Lee A. Jackson, David O. Walter, Anthony Zell Roisman, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Robert R. Walker, Inc., and Robert R. and Wanda A. Walker, filed separate petitions in the Tax Court challenging deficiencies in income tax assessed against them. The issues were tried in a consolidated hearing and resulted in judgments sustaining the Commissioner's assessments. T. C. Memo. 1965-28, 24 CCH Tax Ct. Mem. 140 (1965). Robert R. Walker and his wife Wanda, and Robert R. Walker, Inc., have appealed. The decision subjects the corporation to accumulated earnings tax for 1957 under Section 531 of the Int. Rev. Code of 1954; disallows deductions claimed by the corporation as ordinary and necessary business expenses for the costs of use and maintenance in the years 1957 through 1961 of a lodge for entertainment; and charges the Walkers with "constructive dividend" income in corresponding amounts. We affirm the decision.

Robert Walker was sole proprietor of a business of transporting automobiles until 1946. In that year the corporation was formed under Indiana law and took over the business. It operated trucks in interstate commerce under certificates from the Interstate Commerce Commission with authority to serve points in Indiana, Texas, Louisiana, Arkansas, South Carolina and western North Carolina. Its principal client was the Studebaker Corporation of South Bend, Indiana. In 1954 Studebaker was merged with Packard into the Studebaker-Packard Corporation, which continued as the Walker Corporation's main client.

The corporation sought unsuccessfully to enlarge its authority from the ICC in 1946, 1948 and 1953. In 1958 the ICC enlarged the authority to points in Alabama, Georgia, Tennessee, New Mexico and eastern North Carolina. The corporation's fortunes rose and fell as the Studebaker-Packard Corporation gained or lost. Its high points were in 1953 and 1959, when its net profits before taxes were respectively $222,000.00 and $378,-

000.00, with varying profit figures in the years between.[1] From 1954 through 1960, except for 1959, Studebaker-Packard operated at a loss. In 1961 it began shipping cars by rail and the Walker Corporation sustained a loss of $80,-000.00 before taxes. In that year the Walkers moved their residence from South Bend, Indiana, to Oakland, California.[2]

## No. 15323

Robert Walker owned 748 of the 750 authorized shares of the corporate stock during the years in question. He was president and treasurer, his wife Wanda was secretary, and Beare Philipson was vice president. They were also the only directors. In 1952 the directors authorized by resolution the purchase of lakefront residential property and construction of a lodge for entertainment and recreation. The ten-room lodge, suitable for year-round living and for "entertaining on a large scale" on Diamond Lake near Cassopolis, Michigan, about 25 miles from South Bend, was completed in 1953. The corporation paid $238,033.94 for the land, lodge, furniture and recreation equipment. The corporate resolution of April 15, 1952 recited that the purpose of the investment was to supply entertainment and recreational facilities to improve "the morale of its employee personnel" and to cultivate and maintain the good will of the executives and dealers of Studebaker Corporation. Robert Walker, by corporate resolution dated May 29, 1953, was "charged with the responsibility" of the entertainment program, which, the resolution stated, could be best carried out if he and his family occupied the lodge in the summer months. The resolution stated that each member of the Walker family was to pay the corporation $10.00 per day for food and lodging when Walker was not entertaining corporate guests.

Walker, pursuant to the resolution with respect to his family's use of the lodge, paid the corporation, for 1957, $3,010.00; 1958, $4,290.00; 1959, $3,-410.00; 1960, $3,570.00; and 1961, $3,120.00. For each of the years the Commissioner disallowed the claimed deduction, as ordinary and necessary business expenses, of the lodge expenses and depreciation, except to the extent of $2,100.00 per year and the amounts paid by Walker to the corporation for his family's use. The Commissioner disallowed the following amounts, and held these constituted dividends to the Walkers: for 1957, $23,385.68; for 1958, $14,-975.90; for 1959, $14,051.49; for 1960, $18,208.60; and for 1961, $21,627.39.

In 1956 an agent of the Internal Revenue Service audited the corporation's 1953 and 1954 returns, making adjustments, *inter alia*, for Walker's excessive compensation and for unallowable deductions for lodge furnishings. The Walkers argue that, since the following items were not challenged the Commissioner thus determined in 1956: that the corporation acquired and held the lodge as a business investment and that its expenses to the corporation were ordinary and necessary during the taxable years of 1953 and 1954; and that the $10.00 per day paid to the corporation for each member of the Walker family was reasonable. They cite Seven Canal Place Corp. v. Commissioner of Internal Revenue, 332 F.2d 899 (2nd Cir. 1964), in support of their argument that in the absence of a showing of changing circumstances the prior 1956 determination should preclude the determinations before us.

We cannot agree that the Commissioner was bound by the 1956 determination unless he proved it was a mistake. The prior determination does not relieve the Walkers of the burden here of showing that the Tax Court's confirma-

---

1. Net profit before taxes, other years: 1954, $26,000.00; 1955, $52,000.00; 1956, $24,000.00; 1957, $67,000.00; 1958, $30,-000.00; 1960, $191,000.00; 1961, (loss) $80,000.00.

2. Walker sold his South Bend residence in 1957, and from that time through the summer of 1961 the Walker family spent their summers at the Diamond Lake Lodge and the winters in Palm Springs, California.

tion of the disallowances was clearly erroneous. In *Seven Canal Place* the Commissioner agreed upon a compromise with taxpayers upon a certain amount of deductible business expense and subsequently, with no change in circumstances, reduced the allowance from $9,400.00 to $1,500.00. The Tax Court, with no basis for doing so, increased the allowance to $5,000.00. The court of appeals in remanding noted a lack of explanation and inadequate findings by the Tax Court. Here the deductions were not challenged and then compromised, nor is there an inadequacy of findings upon which the disallowance was confirmed.

■ We do not agree either with the Walkers' contention that the Tax Court's use of the term "lavishly" in its opinion [3] shows an erroneous application by the court of the 1962 amendments to the Revenue Code,[4] instead of the prior law which governs this case. The evidence here with respect to the lodge and entertainment justified the term, aside from any consideration of the amendment. The Walkers' statement of facts itself says the lodge had "facilities for easy maintenance and luxurious living."

■ The Walkers claim error in the court's treatment of the entire amount of the disallowed lodge deductions as constructive dividends, despite evidence of "the fair value of the benefits to Walker" not in excess of "$12.57 per day per member of the family for each day" they were at the lodge.[5] We see no merit to the

argument that the Tax Court was required to limit the amount of constructive dividends to the value of the benefit to the Walkers as measured by the testimony of their witnesses that this value was not in excess of $12.57 per day per person. The Tax Court properly upheld the Commissioner's use of the actual out-of-pocket amounts expended by the corporation (less the amount paid as rental by Walker and the $2,100.00 allowance for reasonable business expense) as the measure of the constructive dividends. And there was expert testimony that the lodge facilities had a "fair rental value" of $16,500.00 per annum.

■ The Tax Court affirmed the Commissioner's determination that, except to the extent of $2,100.00 per year, the lodge expenses in excess of the amounts paid by Walker for its use, and claimed by the corporation as business expenses, were not "ordinary and necessary." The Walkers argue that there is no rational basis in' the record for this $2,100.00 figure. In oral argument in this court, counsel for the Commissioner conceded that no basis for the $2,100.00 figure was given by the Commissioner or court or brief.[6] It is significant that taxpayers do not suggest a figure—less than the full deductions claimed—which would be more appropriate. United Aniline Co. v. Commissioner of Internal Revenue, 316 F.2d 701, 704 (1st Cir. 1963); International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578, 587 (7th Cir. 1960). And

---

3. The court stated:
   In our opinion the corporation's claim here is a gross abuse of the privilege of deducting, as business expenses, the costs of entertainment. However helpful the program may have been in Walker's opinion, it is not ordinary, nor is it appropriate, as a business practice, for a corporation to entertain so frequently and so lavishly the responsible officers of another corporation to induce them to favor it. See Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

4. Taxpayers refer to Sen.Rep.No.1881, 87th Cong., 2d Sess., pp. 30–32, 2 U.S.C. Cong. & Adm.News 3304, 3332–3335 (1962). The amendments of the Revenue Act of

1962 to § 274 became effective Jan. 1, 1963.

5. Brief of the Petitioners-Appellants, p. 33.

6. The Tax Court stated:
   The respondent [Commissioner] does not deny that there was some business relationship between the entertainment * * * and the business of the corporation and has allowed as a deduction on this account the amount of $2,100 for each year. * * * The evidence does not establish that these [lodge entertainment] expenses in excess of the amounts allowed by the respondent were ordinary and necessary business expenses of the corporation.

there is, as the Tax Court thought, an "inadequate" showing of what was spent entertaining what guests. We cannot say, in view of the presumption favoring the Commissioner's determination and the inadequacy of taxpayer's proof, that the $2,100.00 figure is so arbitrary as to require reversal of the Tax Court's judgment, for which the taxpayers ask. It follows that there is no merit in the contention that the Walkers, having showed the arbitrariness of the $2,100.00 allowance, destroyed the presumption of correctness and required that the Commissioner go forward with proof that the allowances were correct.

We conclude in this appeal that the Walkers have not shown that the Tax Court's findings are clearly erroneous or its conclusions erroneous.

### No. 15324

■ In its opinion the Tax Court found that Walker used the corporation in the year 1957 for the purpose of avoiding income taxes by permitting "earnings and profits to accumulate instead of being distributed."[7] This finding sustained the Commissioner's deficiency assessment of an additional tax under Sections 531 and 532 of the Int. Rev. Code of 1954.[8]

The corporation contends that the Tax Court should have set this determination of the Commissioner aside, and that the Tax Court in making its finding, as the Commissioner did in his determination, limited consideration to the immediately contemplated needs of the business and disregarded Section 537 by excluding from consideration the reasonably anticipated needs as well.[9]

However, the opinion of the Tax Court included in its consideration the question of the corporation "financing other unconnected activities of its stockholder or other unrelated businesses not then carried on by it or at least immediately contemplated at the time of accumulation." And the court pointed out, among other things, that although the "self-serving" corporate minutes showed concern over its future and a project to search for other businesses, there was no specific plan in 1957 which would justify the accumulation, and nothing to show that the excess accumulated was for invest-

---

7. Deficiencies were assessed against the corporate-petitioner for the years 1957–1960 inclusive. The only issue raised by the corporation which has not been disposed of by our decision in No. 15323 is the accumulated earnings tax for 1957, which respondent computed as follows:

| | | |
|---|---|---|
| Taxable income revised | | $94,593.54 |
| Less capital gain | $5,001.23 | |
| Less applicable tax | 1,250.31 | (3,750.92) |
| Federal income tax per return | | (27,987.61) |
| Accumulated taxable income | | $62,855.01 |
| 27½% of 62,855.01 | | $17,285.13 |

---

8. Section 531 provides for a tax of 27½% of the accumulated taxable income (as defined in § 535) not in excess of $100,000.-00 of every corporation described in § 532. Section 532 provides that this tax "shall apply to every corporation * * * formed or availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed."

9. Section 533(a), Int.Rev.Code of 1954, provides that "the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax," and thus subject the corporation to the tax imposed by § 531 "unless the corporation by the preponderance of the evidence shall prove to the contrary." Taxpayer relies on § 537 of the Int.Rev.Code of 1954, which defines "reasonable needs of the business" to include "the reasonably anticipated needs of the business." No similar provision was contained in the 1939 Code.

ment in El Dorado Investment Co. There was no erroneous failure to apply proper rules.

There is no attack upon the Tax Court's finding that by the end of 1957 the corporation had accumulated a cash surplus of approximately $150,000.00 in excess of a year's operating expenses of about $320,000.00;[10] and that none of this was invested in 1957, and that "only" $126,368.00 was invested in 1958 in an unrelated business (i. e., El Dorado Investment Co.); and that Robert Walker borrowed more than $300,000.00 from the corporation in 1957 (and $250,000.00 in 1958), on which he paid no interest when he repaid the loan late in the year, according to a pattern of borrowing large sums early in the year and repaying them late in the year with funds borrowed personally elsewhere. The court also properly noted that Robert Walker, who was in complete control of the corporation, was himself in a comparatively high income tax bracket. Nor do Walkers challenge the general finding that Walker enjoyed the benefits of the corporate earnings—by having his personal expenses borne by the corporation—and avoided the tax upon dividends which could have been declared.

This general finding with support in the facts, the unchallenged finding with respect to the personal loans and investment in unrelated business, and the fact that no formal dividends were ever paid, justified the Tax Court's ultimate finding. See Treas.Reg. on Income Tax (1954 Code), § 1.533–1(a)(2), 26 C.F.R. § 1.533–1.

Since, under Section 534(b), the corporation was notified of the proposed deficiency based upon the unreasonable accumulation, and submitted no statement, under Section 534(c), to establish a permissive accumulation, it had the burden of proving that the 1957 accumulation of earnings was a reasonable need of the business or that the business had reasonable future needs, anticipation of which required the accumulation. The corporation did not carry the burden. There is a substantial basis in the evidence for the court's findings. They are not clearly erroneous and the conclusions are not erroneous.

The judgments of the Tax Court are affirmed.

SCHNACKENBERG, Circuit Judge (partly dissenting and partly concurring):

I would hold that the record before us sustains petitioners' contention that the decision of the Tax Court in regard to the disallowance of deductions to the Walker corporation is clearly erroneous in regard to the Diamond Lake Lodge and its use for business entertainment. The record clearly shows that the Walker corporation incurred expenses in the operation of the lodge during the taxable years by using the lodge for business entertainment of the representatives of buyers, according to a universally sanctioned business custom. Thus the expenses of the lodge were ordinary and necessary expenses of the business of the Walker corporation.

Otherwise I concur in Judge Kiley's opinion.

---

10. The court thus found inapplicable cases holding that reasonable needs of a corporation justify accumulating a cash reserve sufficient to cover one year's operating expenses. See, e. g., J. L. Goodman Furniture Co., 11 T.C. 530 (1948), acq., 1949–1 Cum.Bull. 2; F. E. Watkins Motor Co., 31 T.C. 288 (1958), acq., 1959–1 Cum.Bull. 5.