Dwight E. Hanson and Janice E. Hanson v. Commissioner.
Hanson v. Commissioner
Docket No. 5549-67.
United States Tax Court
T.C. Memo 1970-15; 1970 Tax Ct. Memo LEXIS 343; 29 T.C.M. (CCH) 40; T.C.M. (RIA) 70015; January 20, 1970, Filed. Roy Stoddard, Jr., First & Market Bldg., 102 First Ave., East, Oskaloosa, Iowa, for the petitioners. Roy S. Fischbeck, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income *344 tax for 1964 and 1965 in the respective amounts of $128.77 and $92.56. The issue presented for decision is whether petitioners are entitled to deduct as business expenses under section 162(a) [1] annual premiums paid during 1964 and 1965 on a life insurance policy assigned as collateral security for a business loan. Findings of Fact At the time their petition was filed, petitioners, husband and wife, were legal residents of Rockwell City, Iowa. They filed their joint Federal income tax returns for 1961, 1964, and 1965 with the district director of internal revenue, Des Moines, Iowa. Dwight E. Hanson will be referred to herein as petitioner. On July 16, 1959, pursuant to petitioner's application, the Farm Bureau Life Insurance Company issued to petitioner, as owner and insured, a life insurance policy in the amount of $50,000. Petitioner Janice E. Hanson was designated as beneficiary of the policy. Under the policy the owner, without the consent and to the exclusion of the beneficiary, was entitled to receive every benefit, exercise every right, and enjoy every privilege *345 conferred by the policy. The policy provided for a guaranteed cash or loan value and paid-up insurance commencing at the end of the third policy year as follows: End of Policy Year
Guaranteed Cash or Loan Value
Paid-Up Ins1p Insurance
3
$ 50
$ 150
4
150
350
5
350
800
6
500
1,100
7
700
1,450
8
900
1,850
9
1,100
2,200
10
1,300
2,550
11
1,500
2,900
12
1,750
3,300
13
1,950
3,650
14
2,200
4,000
15
2,400
4,300
16
2,650
4,650
End of
Guaranteed Cash
Paid-Upance
urance
17
2,900
5,000
18
3,200
5,45 0
19
3,450
5,750
20
3,800
6,250 The policy also provided that the amount of insurance would decline from the original $50,000 to $15,000, in accordance with the following schedule: Policy Year
Face Amount of Insurance
1
$50,000
2
48,250
3
46,500
4
44,750
5
43,000
6
41,250
7
39,500
8
37,750
9
36,000
10
34,250
11
32,500
12
30,750
13
29,000
14
27,250
15
25,500
16
23,750
17
22,000
18
20,250
19
18,500
20
16,750
21 and after
15,000
The quarterly premium of $133 due on October 16, 1959, was not paid within the 30-day grace period provided in *346 the policy for the payment of premiums, and as a result the policy lapsed. During 1959 petitioner, as a sole proprietor, was engaged in the construction of a drive-in theatre, to be known as the Triangle Drive-In Theatre. To finance part of the cost of such construction, petitioner applied to the Small Business Administration (hereinafter SBA) on or about November 24, 1959, for a loan in the amount of $34,000. He took this action on the advice of an official of the Union State Bank (hereinafter the Bank), which proposed to participate in the loan. On January 14, 1960, the SBA agreed, subject to specified conditions, to participate in the loan to the extent of 85 percent. The Bank formally agreed to provide the remaining 15 percent on January 25, 1960. 42 One of the conditions specified by the SBA for approval of the loan was the assignment of life insurance on the life of petitioner in the amount of $30,000. This insurance could be an existing policy, and had to provide for "term, declining balance type term insurance, or any combination thereof." Petitioner applied to the Farm Bureau Life Insurance Company on January 20, 1960, to reinstate the lapsed insurance policy pursuant *347 to its provisions. The policy was promptly reinstated. On February 3, 1960, petitioners assigned all their right, title, and interest in the policy to the Bank as additional collateral security for the $34,000 loan. Furthermore, in order to document the loan, petitioners made and delivered to the Bank on February 13, 1960, their note in the amount of $34,000, payable as follows: (1) Interest at the rate of 5 1/2 percent per annum on the outstanding balance, payable in monthly installments; (2) installment payments of principal in the amounts of $600 in the months of May, June, July, August, and September, and $175 in each of the other months of each year, commencing three months from the date of the note; and (3) the balance of principal and accrued interest to be paid on or before the expiration of eight years from the date of the note. Thereupon, the SBA and the Bank loaned to petitioner $34,000, which was disbursed toward payment of the construction cost of the drive-in theatre. The ownership and operation of the theatre has been a successful and profitable operation. From February 13, 1960, through the end of 1965 petitioners timely made all required payments of principal and *348 interest on the $34,000 loan as they became due. During the same period of time peitioners paid all premiums on the insurance policy, and the policy remained in full force and effect. These premium payments totaled $532 in each of the years 1964 and 1965. On May 19, 1964, the Bank purchased the SBA's remaining share of the loan, at which time the outstanding principal balance of the entire loan was $16,500. As of July 17, 1964 and 1965 (i.e., the end of the fifth and sixth policy years), the outstanding principal balances of the loan were $15,300 and $11,075, respectively. Had petitioner died at any time during the period from February 13, 1960, through the end of 1965, the proceeds of the insurance policy would have liquidated the outstanding balance of the $34,000 loan and relieved petitioner's estate of such liability. In their joint Federal income tax return for 1961 petitioners claimed as a business expense deduction the sum of $532, described therein as representing "Premium on life insurance required to obtain S.B.A. Loan." After an examination of petitioners' 1961 return by an office auditor, including an office conference with petitioner and his attorney, the return *349 was accepted and approved as filed. In each of their joint returns for 1964 and 1965 petitioners claimed deductions of $532 for the premiums paid on the insurance policy. These deductions were disallowed in the deficiency notice with the following explanation: The deduction for expense of premium on life insurance required to obtain SBA loan is disallowed as personal living expense and not an ordinary and necessary business expense. Dwight Hanson is the insured and indirect beneficiary. Opinion The present controversy presents the question whether petitioners are entitled to deduct the premiums paid in 1964 and 1965 on a life insurance policy pledged to the Bank as collateral security for a loan used in petitioners' business. The answer depends upon whether petitioner, the insured, was "directly or indirectly" a beneficiary under the policy within the meaning of section 264(a)(1), which provides as follows: SEC. 264. CERTAIN AMOUNTS PAID IN CONNECTION WITH INSURANCE CONTRACTS. (a) General Rule. - No deduction shall be allowed for - (1) Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any *350 trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy. If this question is answered affirmatively, the premiums are not deductible, regardless of whether they would otherwise be deductible as a business expense. Sec. 1.264-1(a), Income Tax Regs.; Richard M. Glassner, 43 T.C. 713, 715 (1965), affirmed per curiam 43 360 F. 2d 33 (C.A. 3, 1966), certiorari denied 385 U.S. 819 (1966). Petitioner's payment of the premiums on his life insurance policy benefited him in many ways. His procurement of the policy was a prerequisite to the SBA's participation in the loan, and the policy served as collateral security for the loan. By virtue of the assignment of the policy to the Bank by him and his wife (the beneficiary originally designated), the proceeds of the policy in the event of his death, would have been used first to discharge the remaining principal of the loan - thereby indirectly augmenting his estate by eliminating a claim that would otherwise have to be paid by it - and the balance would have been payable to his estate. [2] Each premium payment after the third year generated *351 a guaranteed cash or loan value and paid-up insurance. Finally, when petitioner discharges the loan in full, the policy will be returned to him, and he will then possess all ownership rights, including the rights to designate the beneficiary, to borrow against the policy, and to surrender the policy for its cash value or for paid-up insurance. These benefits are sufficient to constitute petitioner "directly or indirectly" a "beneficiary" under the policy within the meaning of section 264(a)(1). There is no merit in petitioner's contention that he could not be a "beneficiary" of a policy on his own life. The term "beneficiary" is not to be read in its narrow, technical sense; such a reading would deprive the word "indirectly" of any meaning. Thus, in Rieck v. Heiner, 25 F. 2d 453 (C.A. 3, 1928), the taxpayer, at the insistence of a creditor, took out a life insurance policy covering his life and used it as collateral to secure a business loan. Under the predecessor of section 264(a)(1), the court denied the deductibility of the premiums, *352 stating (25 F. 2d at 454): Though assigned to and held by the creditor and for two years used as collateral security, it was, none the less, a policy in which the taxpayer was "directly or indirectly" a beneficiary, for if it had matured when held as collateral, and payment had been made to the creditor, it would indirectly have augmented his estate by decreasing his liabilities. Or if it had matured after it was returned to him by the creditor and payment had been made to the estate the taxable would have benefited directly. * * * To the same effect, see Richard M. Glassner, supra; Jefferson v. Helvering, 121 F. 2d 16, 17 (C.A.D.C. 1941), affirming 40 B.T.A. 274 (1939); Klein v. Commissioner, 84 F. 2d 310, 311-312 (C.A. 7, 1936), affirming 31 B.T.A. 910 (1934). Nor are we persuaded by petitioner's argument that section 264(a) is not applicable because he may be so insolvent at his death that neither his estate nor the natural objects of his bounty - but only his creditors - will benefit from the policy. The argument proves too much; it would nullify section 264(a)(1) when applied to any insurance payable *353 to the taxpayer's estate. Indeed, a similar argument was expressly rejected in Jefferson v. Helvering, supra at 19, where the taxpayer was actually insolvent in the tax year. Petitioner has simply failed to show how his case differs from the usual case of pledging life insurance to secure a debt. Likewise lacking in merit is petitioner's contention that the policy, upon its assignment to the Bank, lost its character as insurance and became a type of guaranty or suretyship. Under a guaranty or suretyship agreement the guarantor or surety incurs a secondary liability on the principal's obligation; under an indemnity agreement the indemnitor undertakes a separate obligation. But here the obligation of the insurance company under the assignment was in no way connected with, or related to, petitioner's liability on the loan. Nor was it a new obligation; it was the same as when the policy was originally written. The assignment created no change in the terms, conditions, or nature of the policy; the only change effected by the assignment was the designation of the person to whom the proceeds were to be paid. Petitioner's argument is implicity rejected in all the cases cited *354 above, except in Jefferson v. Helvering, supra at 17-18, where it is expressly rejected. We find no support for petitioner in section 1.101-1(b)(4) of the Income Tax Regulations.
Petitioner's final argument is that respondent is estopped from disallowing the deductions claimed for the tax years because of the allowance in an office audit of a deduction, identical to those in issue, claimed for 1961. However, the action of the office auditor in allowing a deduction 44 for the 1961 premium does not estop respondent from disallowing the 1964 and 1965 deductions. Walker v. Commissioner, 362 F. 2d 140, 142-143 (C.A. 7, 1966), affirming a Memorandum Opinion of this Court; Knapp-Monarch Co. v. Commissioner, 139 F. 2d 863 (C.A. 8, 1944), affirming 1 T.C. 59 (1942). Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. During the years in issue, the face amount of the policy always exceeded the balance due on the loan by more than $25,000.↩