**John William GOTCHER and Wife, Lois Gotcher, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4539.**

United States District Court
E. D. Texas,
Tyler Division.

Aug. 11, 1966.

Allen E. Pye, J. Robert Dobbs, Jr., Tyler, Tex., for plaintiffs.

Wm. Wayne Justice, U. S. Atty., Tyler, Tex., O. Jan Tyler, Dept. of Justice, Fort Worth, Tex., for the defendant.

## OPINION

SHEEHY, Chief Judge.

This is an action to recover federal income taxes and interest in the amount of $439.08, alleged to have been overpaid by the Plaintiffs for the year 1960. The case was tried before the Court without a jury. From admissions of the parties contained in the pleadings, the stipulations and the evidence offered, the Court finds the pertinent facts to be as hereinafter stated.

The Plaintiffs are, and at all times pertinent were, husband and wife and reside in Sherman, Texas. The Economy Motors, Inc. (Economy) is a Texas Corporation which, since March, 1959, has been engaged in the business of selling Volkswagen automobiles as an authorized, franchised dealer in Sherman, Texas. Plaintiffs own, as a part of their community property, fifty per cent of the stock of Economy. In addition to being a stockholder, Mr. Gotcher is an officer and the General Manager of Economy. During the year 1960, he received a salary of $14,202.76 from Economy, which was reported as income on the joint federal income tax return of the Plaintiffs. Mrs. Gotcher is not employed by Economy and her only direct association with said company is as the owner of an undivided one-half interest in fifty per cent of the capital stock of the company.[1]

Volkswagenwerk, A. G. of Wolfsburg, Germany, referred to hereinafter as VW, is the manufacturer of all Volkswagen vehicles, parts and accessories, with all of its manufacturing plants and facilities being in Germany. Volkswagen of America, Inc., referred to hereinafter as VWOA, is a New Jersey Corporation with headquarters in Englewood Cliff, New Jersey. It is a wholly owned subsidiary of VW and is the sole authorized importer of Volkswagen vehicles, parts and accessories in the United States. The vehicles and other items imported by VWOA are placed on the market and sold throughout the United States through a network of distributorships and dealerships. Inter-Continental Motors Corporation, referred to hereinafter as Inter-Continental, is a Texas Corporation with headquarters in San Antonio, Texas, and is the area distributor of Volkswagen vehicles, parts and accessories for what is known as the San Antonio area, which includes Sherman, Texas. All Volkswagen vehicles that are sold in the United States are sold and serviced by local franchised dealers of which Economy is one.

In 1959, VWOA was in the process of expanding the local dealership facilities in the United States. In the case of each new dealership the dealer was required by VWOA to make a substantial investment of his time and capital in a product which was comparatively new in the United States and which, from an appearance standpoint, was not too attractive. The local dealers were required to either lease or otherwise acquire permanent type first class facilities that would convey the impression to the public that Volkswagen was here to stay which, in turn, would assure customers of continuing parts and service availability for the Volkswagen vehicles. All of this was taking place when the "Buy American" campaign was in full swing and the Volkswagen dealers, including the Plaintiffs themselves, needed to be convinced of or sold on the Volkswagen concept.

In 1959, VWOA instituted a program whereby Volkswagen dealers and their wives would be taken on expense paid trips to Germany in order that they might tour the Volkswagen factories in Wolfsburg and Hanover, Germany, and inspect the Volkswagen establishments in Berlin and other areas of Germany, including

---

1. Although the stock is in the name of Mr. Gotcher, Mrs. Gotcher, under the community property laws of the State of Texas, owns an undivided one-half interest in said stock in the name of Mr. Gotcher.

the facilities of local dealers in various areas of Germany.

From the standpoint of VW, VWOA and Inter-Continental, the purpose of such dealer tours to Germany was to strengthen the Volkswagen family business ties, to supply first-hand information about Volkswagen and the organization behind it, to educate the dealers as to the merits of the product they sell, to acquaint the dealers with the manufacturing processes responsible for Volkswagen's excellent performance reputation, and to acquaint the dealers with the conditions existing in West Germany in order that the dealers would themselves become convinced of the stability of the Volkswagen organization and the stability of the economy of West Germany to the end that the dealers could go back to their respective communities and convince their customers and potential buyers of Volkswagen vehicles that the organization behind the Volkswagen was a substantial one and that the Volkswagen was here to stay.

The inclusion of the dealers wives on the tours to Germany was based on the belief of and realization by VWOA that today the American wife exercises a substantial influence in family investments. Due to the fact that a Volkswagen dealer, on the average, makes an investment in the neighborhood of $250,000.00 in his dealership sales and service facilities, it would be desirable and advisable for the wife to acquire first hand as much information as possible about her husband's stock-in-trade, what kind of company produces the product he sells, and what may be the character of the organization behind the product so that she, when discussing with her husband on the advisability of making an investment which could have such a substantial effect on their future, would be better equipped to exercise her judgment and form an intelligent opinion—and, from VWOA's standpoint, hopefully would be more likely to encourage her husband to take the risk of investment.

The side trips, sightseeing and other pleasurable activities which had nothing to do with the inspection of Volkswagen facilities were not the primary purpose of the tours, but were added for the purpose of increasing the dealers' interest and participation to the end that the dealers and their wives would more readily accept invitations to make the tour. However, even the sightseeing trips indirectly served to further the stated business purpose of attempting to demonstrate the favorable business climate and the sound state of the economy in West Germany. The principal and dominant purpose of the tour was business and not pleasure.

It was the desire and intention of VWOA that all Volkswagen dealers in the United States and their wives make the German Tour. The tours were all alike and were conducted on a well planned schedule. Each of the independent distributors such as Inter-Continental, was given a quota of dealers for each tour that was to be made and it was up to the independent distributor to select the dealers in its territory to whom a tour invitation would be extended, under a policy that only dealers who had been dealers for at least six months·would be extended a tour invitation.

The Plaintiffs were extended an invitation by VWOA through Inter-Continental to make the September, 1960, tour. The Plaintiffs, believing it would be in the interest of good business relations between them on the one hand and VWOA and Inter-Continental on the other hand, and that it would promote the business interests of Economy and, in turn theirs, if they made the tour and learned more about the Volkswagen vehicles, the manner in which they were manufactured, and the nature and extent of VW's operations and organization in Germany, decided to and did accept the invitation to make the tour.

Those making the tour the Plaintiffs were to make were to depart for Germany from St. Louis, Missouri, by chartered plane. The Plaintiffs travelled from Sherman, Texas, to St. Louis at their own expense and departed with the others making the tour from St. Louis

on September 19 and arrived in Germany on the same date. Of the 65 people making that tour, 60 were Volkswagen dealers and their wives and the remaining 5 were Volkswagen employees. Those making that tour, including Plaintiffs, remained in Germany, following the schedule previously arranged and established by VWOA, until the afternoon of September 30 when they departed by plane for the return trip to St. Louis. Upon arriving in St. Louis, the Plaintiffs returned from there to Sherman, travelling from St. Louis to Sherman at their own expense.

While in Germany, the dealers and their wives, including the Plaintiffs, spent a substantial majority of the time, other than the time spent in normal sleep and rest, touring Volkswagen facilities in Germany, observing how the Volkswagen vehicles and parts were manufactured and how various Volkswagen dealerships in Germany were operated. In addition to touring such manufacturing and dealership facilities, the dealers making the tour even while at dinner, on occasions, listened to talks made by various Volkswagen officials as to the organization, etc. behind Volkswagen. During the free time the tour schedule allowed those making the tour, a number of the dealers, including Mr. Gotcher, spent a substantial portion of said time inspecting Volkswagen local dealerships in Germany and discussing with the personnel of said local dealerships matters pertaining to the operation of such dealerships. As a result of the inspection of the dealerships that were on the tour schedule and the inspections of the dealerships made during the free time, Mr. Gotcher learned of procedures and uses of equipment which could add to the better operation of his dealership in Sherman, some of which procedures he has already put into effect and others of which he expects to put in effect in the future as he can afford to do so.

Expenses of the trip and tour were paid on behalf of the Plaintiffs in the amount of $1,372.30 by VW, VWOA, Inter-Continental and Economy, with Economy paying only $348.72 of said sum. The amount of $348.72 paid by Economy consisted solely of a portion of the cost of the plane flight from St. Louis to Germany and return. As above indicated, no part of the expenses incurred by the Plaintiffs in travelling from Sherman to St. Louis and from St. Louis back to Sherman was paid by anyone other than the Plaintiffs. While the sum of $1,-372.30 covered the cost of lodging for Plaintiffs while they were in Germany, most of their meals and the entertainment scheduled on the program, there were certain expenses the Court judicially knows the Plaintiffs incurred for which they were not reimbursed such as tips, taxi fares, some meals, etc.

While the invitations extended to the dealers to make the Volkswagen tour did not specifically order or require the dealers and their wives to make the tour, it is only fair to conclude that such invitations had the practical effect of being an order or directive, at least from the viewpoint of the dealer. The dealers were aware of the desire of VWOA that the Volkswagen dealers and their wives make the tour; therefore, it would only be natural that a dealer, upon receiving an invitation, would feel that in the interest of good business relations in the future with VWOA and the independent distributor from whom he obtained his vehicles, parts and accessories, he was compelled by sound business judgment to accept the invitation on behalf of himself and his wife unless he were in a position to furnish good reasons why he could not accept same.

In making the tour, the dealers and their wives performed no services for VW, VWOA or Inter-Continental, or any of them. Furthermore, the tour was not given the dealers, including Plaintiffs, as compensation, bonuses, dividends, prizes or awards because of any service rendered by the dealers, or because of any performance on the part of the dealers in the operation of their dealerships.

Plaintiffs timely filed a joint individual income tax return for the year 1960 and paid the tax shown due thereon.

Thereafter, the Internal Revenue Service examined Plaintiffs' 1960 income tax return and determined that the sum of $1,372.30 that was paid by VW, VWOA, Inter-Continental and Economy toward Plaintiffs' expenses incurred in the making of the tour in September, 1960, was income to the Plaintiffs. Based upon that determination, the I.R.S. made a deficiency assessment against the Plaintiffs in the amount of $356.79 without allowing Plaintiffs a deduction for any portion of said sum as an ordinary and necessary business expense, although I.R.S. concedes that a portion of said sum would constitute an ordinary and necessary business expense incurred by Mr. Gotcher and would be deductible. On or about February 22, 1965, Plaintiffs paid said deficiency assessment in the amount of $356.79, plus interest in the sum of $82.-29. On or about March 11, 1965, Plaintiffs filed with the District Director of Internal Revenue at Dallas, Texas, a claim for refund, which said claim, with an amendment thereto filed on November 30, 1965, requested a refund of the total amount of the deficiency assessment and interest thereon paid by them. Prior to the filing of this suit, more than six months had elapsed from the date of the filing of said claim for refund without said refund having been made in whole or in part.

The questions herein presented are: (1) whether the expense paid trip to Germany in 1960 in the amount of $1,-372.30 constituted taxable income to the Plaintiffs, and (2) if same was taxable income, whether the Plaintiffs are entitled to a deduction as an ordinary and necessary business expense for all or any portion of said sum of $1,372.30.

 As pointed out by the Supreme Court in Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830, the definition of gross income in the Internal Revenue Act "is broad enough to include in taxable income any economic or financial benefit conferred on the employee *as compensation,* whatever the form or mode by which it is effected." (emphasis supplied) It is clear that in order for an economic or financial benefit to constitute taxable income, it must be in the nature of *compensation.* As the facts above pointed out reflect, the expense paid trip to Germany was not in any sense of the word compensation to the Plaintiffs. The cases of Patterson v. Thomas (5 Cir., 1961) 289 F.2d 108 and Rudolph v. United States, D.C., 189 F.Supp. 2, affirmed per curiam, 5 Cir., 291 F.2d 841, relied on so heavily by the Government, are not in point. Each of those cases involved an expense paid trip which was principally for pleasure given an employee by the employer because of outstanding performance on the part of the employee. In the instant case, the Plaintiffs were not employees of VW, VWOA and Inter-Continental, or either of them, and the trip was not given to the Plaintiffs because of any service they rendered those who paid for the trip, or any of them. On the question of expenses of a trip being paid by another person constituting income to the person on whose behalf the expenses were paid, it is interesting to note the comments of Mr. Justice Douglas in his dissenting opinion in Rudolph v. United State, 370 U.S. 269, 278, 82 S.Ct. 1277, 8 L.E.2d 484, in which Mr. Justice Black joined, wherein the majority of the Supreme Court dismissed Rudolph's petition for certiorari as having been improvidently granted.

The Court finds and concludes that, under the facts in this case, the expense paid trip to Germany did not constitute taxable income to the Plaintiffs in whole or in part, and the I.R.S. was in error in determining that the sum of $1,372.30 paid by VW, et al. for Plaintiffs' expenses on said trip was income to the Plaintiffs.

As above indicated, there was a sound business reason from the standpoint of VW, VWOA, Inter-Continental and Economy for giving the expense paid trip to the Plaintiffs and the I.R.S. so recognized because VWOA, Inter-Continental and Economy deducted their respective shares of the cost of the tour to Germany on their income tax returns, and no part of said deduction has been disallowed by

I.R.S. In the instant case, I.R.S. recognizes that, at least as to Mr. Gotcher, the trip had a business purpose, because the Government concedes that expenses paid on behalf of Mr. Gotcher for meals and lodging that are attributable to the time he was inspecting the Volkswagen facilities in Germany and visiting Volkswagen dealers in Germany were ordinary and necessary business expenses and, as such, were deductible.

In the circumstances of this case, the Court finds and concludes that as to Mr. Gotcher the entire trip had a business purpose and all of that portion of the $1,372.30 paid by VW, et al. as expenses incurred by the Plaintiffs on the trip that is attributable to expenses incurred on behalf of Mr. Gotcher, is an ordinary and necessary business expense incurred by Mr. Gotcher. Furthermore, the Court finds that, under the peculiar facts of this case, the presence of Mrs. Gotcher on the trip in question had a bonafide business purpose, and, therefore, that portion of the $1,372.30 of the expenses paid by VW, et al. on behalf of the Plaintiffs that is attributable to expenses incurred by Mrs. Gotcher on the trip is an ordinary and necessary business expense incurred by Mrs. Gotcher. Therefore, the Court finds and concludes that if it is mistaken in holding that the sum of $1,372.30 paid by VW, et al. as expenses for the Plaintiffs on the trip in question did not constitute income to them, said sum of $1,372.30 constituted an ordinary and necessary business expense incurred by Plaintiffs, and that the Plaintiffs are entitled to a deduction in that amount on their income tax return for the year 1960.

In light of the findings and conclusions above made and reached, it follows that the Plaintiffs are entitled to recover from the Government that amount of the deficiency assessment and interest paid by the Plaintiffs that is attributable to the erroneous action of the I.R.S. in treating the $1,372.30 paid by VW, et al. as expenses of the Plaintiffs on the trip in question as income to the Plaintiffs.

The parties having stipulated that, if the Court renders a decision for the Plaintiffs in this cause, the amount of the judgment in accordance therewith will be determined by and agreed to between the parties, for the purpose of entry of judgment, the parties should, within thirty days from the date of this Opinion, file a stipulation in this cause setting forth the amount the Plaintiffs are entitled to recover in light of the Court's decision herein made. Simultaneously with the filing of such stipulation, the attorneys for the Plaintiffs should present to the Court an appropriate form of judgment allowing Plaintiffs a recovery in the amount set forth in the stipulation and providing that the parties shall pay their own costs.

This Opinion, together with the stipulation of the parties to be hereafter filed in this cause as directed in the next preceding paragraph, will constitute the Findings of Fact and Conclusions of Law in this cause.