Allen J. McDonell and Jeanne M. McDonell v. Commissioner.
McDonell v. Commissioner
Docket No. 3575-64.
United States Tax Court
T.C. Memo 1967-18; 1967 Tax Ct. Memo LEXIS 243; 26 T.C.M. (CCH) 115; T.C.M. (RIA) 67018; January 31, 1967
Gaar W. Steiner and Richard D. Hobbet, 626 E. Wisconsin Ave., Milwaukee, Wis., for the petitioners. Stanton Sornson, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in income tax and an addition to tax under section 6653(a) [1] for 1960 in the amounts of $246.83 and $12.34, respectively. Because of concessions by respondent, the only issue remaining for decision is whether all or any portion of expenses of a trip taken by petitioners and paid for by petitioner Allen's employer are includable in petitioners' income or, *244 if so, are deductible in arriving at adjusted gross income. Findings of Fact Some of the facts are stipulated and are found accordingly. Allen J. and Jeanne M. McDonell, husband and wife, residing at 5505 Russett Road, Madison, Wisconsin, filed their joint tax return for 1960 with the district director of internal revenue, Milwaukee, Wisconsin. Allen was employed by Dairy Equipment Co. (hereinafter referred to as DECO) in 1956 as assistant sales manager and he continued in that position through the taxable year in question. At the time of hiring Allen DECO pursuant to established policy, interviewed Jeanne. The purpose of interviewing the wife of a potential home office salesman was to be sure the wife understood that her husband would be required to do considerable traveling for the company and to evaluate her capacity to discharge social responsibilities required in connection with the company's business activities. At no time did either of the petitioners own any stock in DECO. DECO is a sales company, distributing bulk milk coolers manufactured for it on a subcontract basis. During the period in question, DECO coolers were sold through territorial salesmen and independent *245 distributors. They handled other products dissimilar to those of DECO but competitive in terms of demand upon their time and effort. Sales supervision was provided by home office salesmen. Allen, as assistant sales manager, was one of eight home office salesmen. None of the home office salesmen was assigned to a specific territory; each would be sent into the field when and where needed. Beginning in 1959, DECO initiated an incentive sales contest for its 31 distributors and 9 territorial salesmen. The prize in 1959 for achieving an established sales quota was a trip to Hawaii for each winner and his wife. Home office salesmen did not participate. There were 11 winners. They had produced $3,929,690.62 in gross sales, representing 56 percent of the total sales volume generated by the company during the period of the contest. Of the 11 winners in 1959, 10 decided to take the trip. At the time of initiating the contest, DECO management decided to send one home office salesman and his wife for each three contest winners. This decision was based upon the company's past experience that unguided gatherings of salesmen and distributors often turned into complaint sessions and were *246 otherwise damaging to the company's business interests. DECO assigned four home office salesmen and their wives to the trip. They were selected by placing the names of all the home office salesmen in a hat and drawing out four names. This random method was used to avoid discontent and dissatisfaction. The same random method was used for selecting home office personnel to represent the company on subsequent similar trips. A home office salesman chosen one year was eligible the next year. Those selected to go on a particular trip received no cut in pay and did not lose vacation time. Those not chosen received no substitute benefit. Allen was one of the four chosen. At the time of drawing the names, the home office salesmen were told that those selected and their wives were expected to go, although they would have been excused for good reasons. They were instructed that they should consider the trip as an assignment and not as a vacation and that their job was to stay constantly with the contest winners, to participate in all the scheduled activities, and not to go off alone. Their objective was not only to make sure that every winner enjoyed himself but to guide anticipated informal *247 discussion relating to DECO's business in order to protect and enhance DECO's image with its distributors and territorial salesmen. The wives were considered essential participants in the achievement of this objective. DECO felt it would be impossible for stag salesmen to host a trip for couples. The contest winners and the home office personnel departed from Madison, Wisconsin, on February 4, 1960, arriving in Honolulu on February 5. They left Hawaii on February 14, returning to Madison on February 15. Aside from one day which was devoted to a sales meeting, there were no direct business activities on the trip. Petitioners performed their assigned duties, which consumed substantially all of the trip time. Neither had any spare time, as they had hoped to have, to go swimming or shopping. The portion of the trip costs paid by DECO and attributable to petitioners was $1,121.96. Petitioners reported $600 as miscellaneous commissions in their tax return for 1960 as the estimated cost to DECO attributable to Jeanne's presence on the trip. Respondent determined a deficiency based on the entire cost of the trip. [2] Petitioners now claim that they erroneously reported the $600 and *248 seek a refund in addition to the determination that respondent's deficiency was in error. Opinion The battle lines in this case are clearly drawn. Petitioners assert that they took the trip in order to carry out duties required of them by virtue of Allen's employment by DECO. Respondent counters that the trip represented an award, taxable to petitioners under section 74, or additional compensation, taxable under section 61. We agree with petitioners. The mere fact that petitioners were selected by a random drawing does not make the trip a taxable prize or award under section 74. Surely there would have been no question if the drawing had been designed to choose a home office salesman to take a trip without his wife to handle a disgruntled customer. The method of selection was founded on a sound business reason, namely, to choose those who were to serve DECO's business objectives on a basis which would obviate any feeling of discrimination. The situation of petitioners is to be distinguished from that of the contest winners, whose tax liability is not before us *249 and for whom the trip was both a reward and an incentive. Similarly, the fact that the trip was a vacation for the contest winners does not necessarily make it a vacation for petitioners. Unlike the contest winners, petitioners were expected to go as an essential part of Allen's employment. The right to go carried with it the duty to go. The trip was not a vacation for the petitioners. It was realistically a command performance to work. What was a social benefit to the contest winners was a work obligation to these petitioners. More importantly, petitioners herein were expected to devote substantially all of their time on the trip to the performance of duties on behalf of DECO in order to achieve, albeit subtly, DECO's well-defined business objectives. In this respect, the situation is unlike that in (C.A. 5, 1961), certiorari denied , where the Court found that, although the taxpayer had an obligation to attend the convention, his work responsibility was minimal. Nor do we consider it material that petitioners enjoyed the trip. Pleasure and business, unlike oil and water, can sometimes be mixed. *250 See (C.A. 2, 1922). Similarly, although the fact that the trip involved a resort area is an element to be taken into account, cf. , it is not conclusive. A resort may be heaven to certain people but something less than that to others, depending on the circumstances. See Mr. Justice Douglas dissenting in $ . It is noteworthy that neither of petitioners went swimming or shopping during their entire stay, two activities for which Hawaii is famous. Again, unlike the taxpayer in , petitioners' right to go on the trip was not determined by any standard of work performance. In addition, home office salesmen who did not go on the trip received no substitute compensation and those who did go were not eliminated from consideration for trips in subsequent years. There is not the slightest suggestion that the trip which the petitioners took was conceived of as disguised remuneration to them. On the contrary, DECO had sound business reasons for them to go. We recognize that the presence of an employer business *251 purpose does not thereby preclude a finding of compensation to the employee. But such business reasons, when coupled with the equally compelling business circumstances involving these petitioners' participation, made the trip no different from any other business trip requiring their services - including Jeanne, whose duties were substantial and could not have been performed by stag men. Cf. ; . We hold that, under all the facts and circumstances herein, the expenses of the trip are not includable in the gross income of petitioners. In view of this holding, we need not consider an alternative argument of petitioners that the trip had no fair market value to them. See, e.g., . Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. Respondent concedes that the deficiency is partially in error because of the amount reported by petitioners.↩