UNITED STATES of America,
Appellant,

v.

John William GOTCHER et ux.,
Appellees.

No. 24472.

United States Court of Appeals
Fifth Circuit.

Aug. 27, 1968.

Rehearing Denied Oct. 28, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Jonathan S. Cohen, Stuart A. Smith, Attys., Dept. of Justice, Washington, D. C., William Wayne Justice, U. S. Atty., Tyler, Tex., for appellant.

J. Robert Dobbs, Jr., Allen E. Pye, Tyler, Tex., for appellees.

Before JOHN R. BROWN, Chief Judge, and BELL and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge.

In 1960, Mr. and Mrs. Gotcher took a twelve-day expense-paid trip to Germany to tour the Volkswagen facilities there. The trip cost $1372.30. His employer, Economy Motors, paid $348.-73, and Volkswagen of Germany and Volkswagen of America shared the remaining $1023.53. Upon returning, Mr. Gotcher bought a twenty-five percent interest in Economy Motors, the Sherman, Texas Volkswagen dealership, that had been offered to him before he left. Today he is President of Economy Motors in Sherman and owns fifty percent of the dealership. Mr. and Mrs. Gotcher did not include any part of the $1372.30

in their 1960 income. The Commissioner determined that the taxpayers had realized income to the extent of the $1372.30 for the expense-paid trip and asserted a tax deficiency of $356.79, plus interest. Taxpayers paid the deficiency, plus $82.29 in interest, and thereafter timely filed suit for a refund. The district court, sitting without a jury, held that the cost of the trip was not income or, in the alternative, was income and deductible as an ordinary and necessary business expense. 259 F.Supp. 340. We affirm the district court's determination that the cost of the trip was not income to Mr. Gotcher ($686.15); however, Mrs. Gotcher's expenses ($686.15) constituted income and were not deductible.

█ Section 61 of the Internal Revenue Code of 1954 [hereinafter referred to by section number only] defines gross income as income from whatever source derived and specifically includes fifteen items within this definition. The court below reasoned that the cost of the trip to the Gotchers was not income because an economic or financial benefit does not constitute income under section 61 unless it is conferred as compensation for services rendered. This conception of gross income is too restrictive since it is well-settled that section 61 should be broadly interpreted and that many items, including noncompensatory gains, constitute gross income.[1]

█ Sections 101–123 specifically exclude certain items from gross income. Appellant argues that the cost of the trip should be included in income since it is not specifically excluded by sections 101–123, reasoning that Section 61 was drafted broadly to subject all economic gains to tax and any exclusions should be narrowly limited to the specific exclusions.[2] This analysis is too restrictive since it has been generally held that exclusions from gross income are not limited to the enumerated exclusions.[3] Moreover, the Supreme Court in Rudolph v. United States, 1962, 370 U.S. 269, 82 S.Ct. 1277, 8 L.Ed.2d 484, has indicated, in concurring and dissenting opinions to dismissing the writ of certiorari as improvidently granted, that sections 101–123 are not exhaustive. See also Disney v. United States, C.D.Calif.1967, 267 F. Supp. 1; John L. Ashby and Cornelia G. Ashby, 1968, 50 T.C. No. 38 (May 29, 1968); J. Simpson Dean, 1963, 35 T.C. 1083.

1. See Rudolph v. United States, 1962, 370 U.S. 269, 82 S.Ct. 1277, 8 L.Ed.2d 484; James v. United States, 1961, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (embezzled funds); Commissioner of Internal Revenue v. Glenshaw Glass Co., 1955, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (exemplary damages); William A. Brown, 1967, 47 T.C. 399 (strike benefits); J. Sneed, The Configurations of Gross Income 63 (1967).

2. See Commissioner of Internal Revenue v. Glenshaw Glass Co., 1955, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483; Smith v. Commissioner of Internal Revenue, 6th Cir. 1966, 370 F.2d 178; Buder v. United States, 8th Cir. 1966, 354 F.2d 941; United States v. James, 9th Cir. 1964, 333 F.2d 748; Heard v. Commissioner of Internal Revenue, 8th Cir. 1964, 326 F.2d 962; United Grocers, Ltd. v. United States, 9th Cir. 1962, 308 F.2d 634.

3. Under the 1939 Code a similar statutory scheme existed—a broad definition of gross income with certain specific exclusions. Int.Rev.Code of 1939, § 22. Under the 1939 Code, however, meals and lodging furnished for the convenience of the employer were not specifically excluded, as they are under the 1954 Code. See Int.Rev.Code of 1954, § 119. Nevertheless, the Treasury, as well as the courts, held that meals and lodging furnished for the convenience of the employer were not included within the gross income of the employee. See Diamond v. Sturr, 2d Cir. 1955, 221 F.2d 264; Saunders v. Commissioner of Internal Revenue, 3d Cir. 1954, 215 F.2d 768; Treas.Reg. 111, § 29.22(a)–3. See generally H. Simons, Personal Income Taxation 53 (1938); J. Sneed, The Configurations of Gross Income 82, 85 (1967); Klein, The Deductibility of Transportation Expenses of a Combination Business and Pleasure Trip—A Conceptual Analysis, 18 Stan.L.Rev. 1099, 1102 (1966).

In determining whether the expense-paid trip was income within section 61, we must look to the tests that have been developed under this section. The concept of economic gain to the taxpayer is the key to section 61. H. Simons, Personal Income Taxation 51 (1938); J. Sneed, The Configurations of Gross Income 8 (1967). This concept contains two distinct requirements: There must be an economic gain, and this gain must primarily benefit the taxpayer personally. In some cases, as in the case of an expense-paid trip, there is no direct economic gain, but there is an indirect economic gain inasmuch as a benefit has been received without a corresponding diminution in wealth. Yet even if expense-paid items, as meals and lodging, are received by the taxpayer, the value of these items will not be gross income, even though the employee receives some incidental benefit, if the meals and lodging are primarily for the convenience of the employer. See Int. Rev.Code of 1954, § 119.

In two cases, Rudolph v. United States, 5th Cir. 1961, 291 F.2d 841, and Patterson v. Thomas, 5th Cir. 1961, 289 F.2d 108, this Court has examined expense-paid trips and held that the value of these trips constituted income. Both of these cases involved conventions for insurance salesmen, and in both it was evident that the trip was awarded as compensation for past services. The instant case differs from *Rudolph* and *Patterson* in that there is no evidence in the record to indicate that the trip was an award for past services since Mr. Gotcher was not an employee of VW of Germany and he did nothing to earn that part of the trip paid by Economy Motors.

The trip was made in 1959 when VW was attempting to expand its local dealerships in the United States. The "Buy American" campaign and the fact that the VW people felt they had a "very ugly product" prompted them to offer these tours of Germany to prospective dealers. The VW story was related by Mr. Horton, who is Manager of Special Events for VW of America. His testimony was uncontradicted and unimpeached. He stated that VW operations were at first so speculative that cars had to be consigned with a repurchase guarantee. In 1959, when VW began to push for its share of the American market, its officials determined that the best way to remove the apprehension about this foreign product was to take the dealer to Germany and have him see his investment first-hand. It was believed that once the dealer saw the manufacturing facilities and the stability of the "new Germany" he would be convinced that VW was for him.[4] Furthermore, VW considered the expenditure justified because the dealer was being asked to make a substantial investment of his time and money in a comparatively new product. Indeed, after taking the trip, VW required him to acquire first-class facilities. It was hoped that this would be accomplished by following the international architectural plans that VW had for its dealerships. It was also hoped that the dealer would adopt VW's

---

4. The district court provided a good summary:

> From the standpoint of VW, VWOA and Inter-Continental, the purpose of such dealer tours to Germany was to strengthen the Volkswagen family business ties, to supply first-hand information about Volkswagen and the organization behind it, to educate the dealers as to the merits of the product they sell, to acquaint the dealers with the manufacturing processes responsible for Volkswagen's excellent performance reputation, and to acquaint the dealers with the conditions existing in West Germany in order that the dealers would themselves become convinced of the stability of the Volkswagen organization and the stability of the economy of West Germany to the end that the dealers could go back to their respective * * * buyers of Volkswagen vehicles that the organization behind the Volkswagen was a substantial one and that the Volkswagen was here to stay.

259 F.Supp. at 342.

international plan for the sales and services department. Mr. Horton testified that VW could not have asked that this upgrading be done unless it convinced the dealer that VW was here to stay. Apparently these trips have paid off since VW's sales have skyrocketed and the dealers have made their facilities top-rate operations under the VW requirements for a standard dealership.

The activities in Germany support the conclusion that the trip was oriented to business. The Government makes much of the fact that the travel brochure allocated only two of the twelve days to the touring of VW factories. This argument ignores the uncontradicted evidence that not all of the planned activities were in the brochure. There is ample support for the trial judge's finding that a substantial amount of time was spent touring VW facilities and visiting local dealerships. VW had set up these tours with local dealers so that the travelers could discuss how the facilities were operated in Germany. Mr. Gotcher took full advantage of this opportunity and even used some of his "free time" to visit various local dealerships. Moreover, at almost all of the evening meals VW officials gave talks about the organization and passed out literature and brochures on the VW story.

■■ Some of the days were not related to touring VW facilities, but that fact alone cannot be decisive. The dominant purpose of the trip is the critical inquiry and some pleasurable features will not negate the finding of an overall business purpose. See Patterson v. Thomas, supra. Since we are convinced that the agenda related primarily to business and that Mr. Gotcher's attendance was prompted by business considerations, the so-called sightseeing complained of by the Government is inconsequential. See Peoples Life Insurance Co. v. United States, U.S.Ct.Cl.1967, 373 F.2d 924, 930. Indeed, the district court found that even this touring of the countryside had an indirect relation to business since the tours were not typical sightseeing excursions but were connected to the desire of VW that the dealers be persuaded that the German economy was stable enough to justify investment in a German product. We cannot say that this conclusion is clearly erroneous. Nor can we say that the enthusiastic literary style of the brochures negates a dominant business purpose. It is the business reality of the total situation, not the colorful expressions in the literature, that controls. Considering the record, the circumstances prompting the trip, and the objective achieved, we conclude that the primary purpose of the trip was to induce Mr. Gotcher to take out a VW dealership interest.

The question, therefore, is what tax consequences should follow from an expense-paid trip that primarily benefits the party paying for the trip. In several analogous situations the value of items received by employees has been excluded from gross income when these items were primarily for the benefit of the employer. Section 119 excludes from gross income of an employee the value of meals and lodging furnished to him for the convenience of the employer. Even before these items were excluded by the 1954 Code, the Treasury and the courts recognized that they should be excluded from gross income.[5] Thus it appears that the value of any trip that is paid by the employer or by a businessman primarily for his own benefit should be excluded from gross income of the payee on similar reasoning. See Disney v. United States, C.D.Calif.1967, 267 F.Supp. 1; Commissioner v. Riss, 1967, 26 T.C.M. 1334.

In the recent case of Allen J. McDonnell, 26 T.C.M. 115, Tax Ct.Mem. 1967–18, a sales supervisor and his wife were chosen by lot to accompany a group of contest winners on an expense-paid trip to Hawaii. In holding that the taxpayer had received no income, the Tax Court noted that he was required by his employer to go and that he was serving

---

5. See note 3 supra.

a legitimate business purpose though he enjoyed the trip. The decision suggests that in analyzing the tax consequences of an expense-paid trip one important factor is whether the traveler had any choice but to go. Here, although taxpayer was not forced to go, there is no doubt that in the reality of the business world he had no real choice. The trial judge reached the same conclusion. He found that the invitation did not specifically order the dealers to go, but that as a practical matter it was an order or directive that if a person was going to be a VW dealer, sound business judgment necessitated his accepting the offer of corporate hospitality. So far as Economy Motors was concerned, Mr. Gotcher knew that if he was going to be a part-owner of the dealership, he had better do all that was required to foster good business relations with VW. Besides having no choice but to go, he had no control over the schedule or the money spent. VW did all the planning. In cases involving noncompensatory economic gains, courts have emphasized that the taxpayer still had complete dominion and control over the money to use it as he wished to satisfy personal desires or needs. Indeed, the Supreme Court has defined income as accessions of wealth over which the taxpayer has complete control. Commissioner of Internal Revenue v. Glenshaw Glass Co., supra. Clearly, the lack of control works in taxpayer's favor here.

■■ *McDonnell* also suggests that one does not realize taxable income when he is serving a legitimate business purpose of the party paying the expenses. The cases involving corporate officials who have traveled or entertained clients at the company's expense are apposite.

Indeed, corporate executives have been furnished yachts, Challenge Mfg. Co. v. Commissioner, 1962, 37 T.C. 650, taken safaris as part of an advertising scheme, Sanitary Farms Dairy, Inc., 1955, 25 T. C. 463, and investigated business ventures abroad, but have been held accountable for expenses paid only when the court was persuaded that the expenditure was primarily for the officer's personal pleasure.[6] On the other hand, when it has been shown that the expenses were paid to effectuate a legitimate corporate end and not to benefit the officer personally, the officer has not been taxed though he enjoyed and benefited from the activity.[7] Thus, the rule is that the economic benefit will be taxable to the recipient only when the payment of expenses serves no legitimate corporate purpose. See Commissioner of Internal Revenue v. Riss, 8th Cir. 1967, 374 F.2d 161. The decisions also indicate that the tax consequences are to be determined by looking to the primary purpose of the expenses and that the first consideration is the intention of the payor. The Government in argument before the district court agreed that whether the expenses were income to taxpayers is mainly a question of the motives of the people giving the trip. Since this is a matter of proof, the resolution of the tax question really depends on whether Gotcher showed that his presence served a legitimate corporate purpose and that no appreciable amount of time was spent for his personal benefit and enjoyment. See United Aniline Co., 1962, 21 T.C.M. 327.

■ Examination of the record convinces us that the personal benefit to Gotcher was clearly subordinate to the concrete benefits to VW. The purpose

---

6. Walker v. Commissioner of Internal Revenue, 7th Cir. 1966, 362 F.2d 140; Gale v. Commissioner of Internal Revenue, 6th Cir. 1961, 297 F.2d 270; American Properties, Inc. v. Commissioner of Internal Revenue, 9th Cir. 1958, 262 F.2d 150.

7. United Aniline Co. v. Commissioner of Internal Revenue, 1st Cir. 1963, 316 F.2d

701, 705; John L. Ashby and Cornelia G. Ashby, 1968, 50 T.C.No. 38 (May 29, 1968). Commissioner v. Riss, 1967, 26 T.C.M. 1334; Manu-Mine Research and Development Co., 1967, 26 T.C.M. 1259, 1278; Bardahl Mfg. Co., 1960, 19 T.C.M. 1245.

of the trip was to push VW in America and to get the dealers to invest more money and time in their dealerships. Thus, although Gotcher got some ideas that helped him become a better dealer, there is no evidence that this was the primary purpose of the trip. Put another way, this trip was not given as a pleasurable excursion through Germany or as a means of teaching taxpayer the skills of selling. He had been selling cars since 1949. The personal benefits and pleasure were incidental to the dominant purpose of improving VW's position on the American market and getting people to invest money.

The corporate-executive decisions indicate that some economic gains, though not specifically excluded from section 61, may nevertheless escape taxation. They may be excluded even though the entertainment and travel unquestionably give enjoyment to the taxpayer and produce indirect economic gains. When this indirect economic gain is subordinate to an overall business purpose, the recipient is not taxed. We are convinced that the personal benefit to Mr. Gotcher from the trip was merely incidental to VW's sales campaign.

 As for Mrs. Gotcher, the trip was primarily a vacation. She did not make the tours with her husband to see the local dealers or attend discussions about the VW organization. This being so the primary benefit of the expense-paid trip for the wife went to Mr. Gotcher in that he was relieved of his expenses. He should therefore be taxed on the expenses attributable to his wife. See Disney v. United States, supra. Nor are the expenses deductible since the wife's presence served no bona fide business purpose for her husband. Only when the wife's presence is necessary to the conduct of the husband's business are her expenses deductible under section 162. Acacia Mutual Life Insurance Co. v. United States, D.Md.1967, 272 F. Supp. 188, 201. Also, it must be shown that the wife made the trip only to assist her husband in his business. A single trip by a wife with her husband to Europe has been specifically rejected as not being the exceptional type of case justifying a deduction. Warwick v. United States, E.D.Va.1964, 236 F.Supp. 761; See also Silverman v. Commissioner of Internal Revenue, 8th Cir. 1958, 253 F.2d 849.

Affirmed in part; reversed in part.

JOHN R. BROWN, Chief Judge (concurring):

I concur in the result and in the opinion. I would only add that on the reasoning here set forth the husband-bread-winner-taxpayer in both *Thomas* and *Rudolph* would have prevailed because it was to the self-expressed self-interest of the two insurance company employers that the agent-employees had to travel to, and be in attendance at, the company planned, paid for, controlled and directed trip.

Attributing income to the little wife who was neither an employee, a prospective employee, nor a dealer, for the value of a trip she neither planned nor chose still bothers me. If her uncle had paid for the trip, would it not have been a pure gift, not income? Or had her husband out of pure separate property given her the trip would the amount over and above the cost of Texas bed and board have been income? I acquiesce now, confident that for others in future cases on a full record the wife, as now does the husband, also will overcome.