**Roy O. DISNEY and Edna F. Disney,
Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 66–232–TC.**

United States District Court
C. D. California.

May 3, 1967.

Hill, Farrer & Burrill, Los Angeles, (by Carl A. Stutsman, Jr., and A. L. Burford, Jr.), Los Angeles, Cal., for plaintiffs.

Wm. Matthew Byrne, Jr., U. S. Atty., for the Central District of California, by Loyal E. Keir, Asst. U. S. Atty., Chief, Tax Division, and Robert T. Jones, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

1

## OPINION

CLARKE, Chief Judge.

By this action Roy O. Disney, president of Walt Disney Productions, and his wife, Edna F. Disney, seek to recover sums claimed as overpayments of income taxes.

The principal sums sought ($2,827.70 for 1962 and $1,418.11 for 1963) represent income taxes on amounts the corporation paid Mr. Disney to compensate for Mrs. Disney's expenses in accompanying him on three business trips abroad and one within the United States. The taxpayers seek also to recover interest on these amounts.

There are secondary issues as to certain deductions taken by the taxpayers, these deductions being unrelated to business travel.

Disney is president, chairman of the board, a director and a member of the executive committee of Walt Disney Productions, a California corporation. He has for many years been chief administrative officer of the corporation, supervising marketing of Disney products around the world and managing financial matters for the parent company and related firms. His brother, the late Walt Disney, supervised the creative facets of the business. Mrs. Roy Disney is not an employee of the corporation, nor was she an employee at any time during the period in question.

Activities of the Disney firm are world-wide. Its income derives primarily from theatrical distribution of motion pictures. Disneyland Park also is a major contributor. Income from distribution of theatrical motion pictures in foreign countries constitutes approximately 35 per cent of the company's gross film earnings. Television programs are licensed around the world.

Other segments of the business include character merchandising (i. e., marketing such items as children's clothing, dolls, and games modeled after Disney characters), publishing, music, and distribution of 16 millimeter motion picture films to schools and other non-theatrical markets. The company sells 42 magazines in 23 countries, and has contracts with 59 book publishers around the world. It has subsidiaries, representatives, and licensees in 58 foreign countries.

All of these activities are based on what the company describes as family type entertainment.

Mr. Disney and other executives of the corporation make business trips within the United States and abroad in furtherance of these far-flung operations. The company has for many years paid the expenses of executives' wives accompanying their husbands on extended business trips, and it has virtually insisted on the wives' presence.

While such policy has been followed for many years, and has been discussed by the directors over the last 10 years, it was not reduced to writing until after the present controversy arose.

Mr. and Mrs. Roy Disney made a three-weeks trip to New York, Paris, and London in January, 1962. They took a three-months world tour beginning March 21, 1962. Mrs. Disney's brother-in-law and sister, Mr. and Mrs. Henry A. Vogel, accompanied them on the world tour, the Vogels traveling at their own expense. The Disneys traveled to New York and Europe between January 4 and February 14, 1963. During the first three weeks of August, 1963, they traveled to Colorado, Wisconsin, and New York, and Mr. Disney went on to London while his wife remained in New York.

The Government has raised no issue as to Mr. Disney's travel having been for business purposes.

On such trips, Mr. Disney meets regularly with representatives of the company and with distributors, licensees, and exhibitors, as well as with persons in finance, the press, governmental officials, and dignitaries in the various countries where the company has business interests.

There may be newspaper interviews and photographs in which Mrs. Disney appears with her husband. It is felt her

presence invites additional publicity from the women's pages, and enhances the image of the company as a disseminator of family entertainment.

Mrs. Disney attends various dinners, social functions, film screenings, and other gatherings of employees, exhibitors, distributors, other business associates, the press, and the public. Plaintiffs take the position Mrs. Disney's presence is important to the company, that her attendance at a screening can make a material difference in the reception accorded a film and in the outcome of a distribution agreement.

During the trips in issue, Mrs. Disney performed these functions. When her husband attended business meetings and conferences in foreign countries, she frequently remained in their hotel and took his telephone messages. On other occasions she went shopping or to a movie during the day.

Mr. Disney testified his wife made the trips at his request, and he made that request as an officer of the company because he "believed she would be helpful." He further testified Mrs. Disney "devoted her entire efforts to helping and supplementing my work."

Gordon E. Youngman, a member of the board of directors of Walt Disney Productions, testified the board feels a wife's presence on such a trip is "essential to present a family picture to the world." George L. Bagnall, another director, likewise testified the wives' presence enhances the image which the Disney corporation seeks to maintain.

The Government takes the position Mrs. Disney's travels were not for business reasons, but were primarily vacation trips. In support of this contention, it pointed to various side trips which the couple made, particularly on the world tour.

The Government introduced into evidence color slides taken by Mr. Vogel at various points of interest around the world. Both Mr. and Mrs. Disney appear in a number of the pictures. Mr. Disney testified the side trips with the Vogels were taken mainly on week ends and on days were persons with whom he wished to transact business were not available.

The August, 1963, trip presents a substantially different set of facts. The Disneys traveled in Colorado, Wisconsin, and New York on business. Then Mr. Disney made a week-long trip to London while his wife remained in New York at the Waldorf. It appears Mrs. Disney did not take part in any business activity during that week; her sole outside activity was to visit relatives.

The principal issue for the court's determination is whether Mrs. Disney's presence on all or part of these trips served a bona fide business purpose.

A strikingly parallel instance arises in the case of Warwick v. United States, 236 F.Supp. 761, 765 (E.D.Va.1964), wherein the court found *deductible* the travel expense of the wife of an executive in the tobacco business. The language of that case is apropos here:

"Her duties were to assist her husband establish the close friendly intimate relationship with the customers that Universal required of her husband. She did not plan the itinerary. She did not sit in on the negotiations of any particular deal, although negotiations were often carried on in her presence. She did not quote prices or describe the market. She did stay very close to her husband while he was conducting his business. She occasionally went to the manufacturing establishments and was taken on tours of the factories. She made the appropriate complimentary remarks about the establishments. She entertained the customers and the wives of the customers in her hotel, and she made it possible and congenial for Mr. Warwick to be entertained in the homes of the customers."

Like Mr. Disney, Mr. Warwick was a high-ranking officer in his firm, and it was he who decided his wife should accompany him. The court said at p. 767:

"The only reason she went was because of her husband's business. Her

trip was directly attributable to her husband's business, and it was appropriate to the conduct of his business. It assisted him in his business and assisted in the production of his income.

"The Court has reached this conclusion in part from the very unusual position that Mr. Warwick occupies in the business world, and the unusual nature of Universal's business."

The recent case of McDonell v. Commissioner, CCH Tax Ct.Rep. Tax Ct. Mem. 18 (1967), held similar payment of a wife's trip expenses were *excludable* from gross income where the wife's presence was considered essential in protecting and enhancing the company's image.

The Tax Court in that case pointed out an occasional side trip for recreational purposes need not destroy the essential business purpose of the principal journey:

"Nor do we consider it material that petitioners enjoyed the trip. Pleasure and business * * * can sometimes be mixed."

The case of Gotcher v. United States, 259 F.Supp. 340 (E.D.Texas 1966), reaches a similar result in a somewhat different factual situation.

■ The court finds Mrs. Disney's presence on the round-the-world trip and the two trips to Europe served to enhance the firm's image abroad, she assisted her husband in business activities, and her travel was for a bona fide business purpose. Cf. 26 CFR 1.162–2(c). Mrs. Disney's travel expenses were properly excluded from gross income. 26 CFR 1.162–17.

As to her stay in New York, there is no evidence of a business purpose. The reimbursed cost of the week at the Waldorf should be treated as additional compensation to Mr. Disney.

■ Two additional issues arise in this case: The deductibility of the cost of a mechanical horse which Mr. Disney purchased in England for reasons of health, and deductions of certain payments which he made to his secretary.

Mr. Disney testified he maintains a gymnasium in his home, and has bought a variety of mechanical exercising equipment over a period of years. He became acquainted with this particular device while making an ocean crossing on the Queen Mary or the Queen Elizabeth.

While the evidence indicates the horse was purchased for reasons of health, it was not specifically recommended by the taxpayer's physician. The doctor had advised Mr. Disney to take more exercise, and had at various times recommended use of other gymnasium equipment. The court does not find this recommendation sufficient to support the claimed medical expense deduction.

■ The evidence shows Mr. Disney paid his secretary $100 a month, in addition to her compensation from the corporation, for her work in overseeing the rental of a house and taking care of an investment portfolio. This additional salary was an expenditure for production of income and properly deductible under 26 U.S.C. § 212.

■ The court finds the taxpayers are entitled to interest on the amounts recovered, as prayed for in the complaint.

Counsel for the plaintiffs shall prepare findings of fact, conclusions of law, and judgment accordingly.