DOUGLAS E. BRUCE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bruce v. Commissioner
Docket No. 15210-81
United States Tax Court
T.C. Memo 1983-121; 1983 Tax Ct. Memo LEXIS 670; 45 T.C.M. (CCH) 916; T.C.M. (RIA) 83121; March 7, 1983. Douglas *671 E. Bruce, pro se. James Kamman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Darrell D. Hallett pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Respondent determined a deficiency in petitioner's 1978 Federal income tax in the amount of $2,994.50. The issues for decision are (1) Whether petitioner is entitled to an ordinary deduction with respect to amounts claimed to have been paid by him as compensation in connection with the acquisition, management, and sale of properties; *672 and (2) whether petitioner is entitled to a deduction for telephone expenses in excess of the amount allowed by respondent. FINDINGS OF FACT Petitioner was a resident of Pacific Palisades, California at the time the petition in this case was filed.
Throughout the tax year 1978, petitioner was employed full time as a Deputy District Attorney for the County of Los Angeles. Also during 1978, petitioner owned 6 single family residences or duplexes located in the Los Angeles general metropolitan area. These properties were acquired by petitioner for investment, were rented for a period of time by petitioner, and were sold in either 1978 or 1979. In addition, petitioner owned a house in Sherman Oaks, California, which he had purchased in 1977 and was having renovated throughout 1978, as well as a lake front property located in Lake Shastina, California. Finally, in January 1978, petitioner purchased a house in Woodland Hills, California, which he occupied as a personal residence until it was sold in June 1979. This residence too was reconditioned by petitioner prior to its sale. Prior to purchasing the Woodland Hills residence, petitioner lived in a one-bedroom apartment for *673 which he was paying rent of $165 per month. Petitioner had known Ms. Elissa Elliott since late 1973. From that time until September 1977, Ms. Elliott was a Deputy Probation Officer for Los Angeles County. Prior to 1978, Ms. Elliott assisted petitioner in the location, acquisition, management, and resale of various investment and rental properties. In January 1977, Ms. Elliott sold her own residence and went to Europe. She returned to Los Angeles in September 1977. At that time, her son Kevin was enrolled in high school in Woodland Hills.After returning from Europe, Ms. Elliott and her son lived with petitioner and she resumed her job with the probation department. In December 1977, she quit her job with the probation department. She then entered into a verbal agreement with petitioner which provided that she would assist petitioner in handling his investment and rental properties, and petitioner would pay her living expenses, as well as those for her son and dog. During 1978, the relationship between petitioner and Ms. Elliott was other than platonic and could be categorized as a "boyfriend-girlfriend relationship." After petitioner and Ms. Elliott entered into their verbal *674 agreement in December 1977, Ms. Elliott located for petitioner a 4 bedroom, 3 bath house on a quarter acre lot with a swimming pool in Woodland Hills, California, which petitioner purchased in January of 1978 and which petitioner then occupied as his residence, as did Ms. Elliott, her son and dog. After petitioner and Ms. Elliott moved into the residence, petitioner had substantial renovations done to it and had furniture purchased for the entire house. Ms. Elliott was primarily responsible for overseeing the renovation of this residence, as well as acquiring furniture for it. She was also involved in substantial renovations made to the Sherman Oaks property acquired by petitioner, as well as management, maintenance, improvements, and renovation of the various other rental properties owned by petitioner. Throughout 1978 and during the time that Ms. Elliott was living in petitioner's household and undertaking these activities, petitioner paid all of the household maintenance expenses, the cost of food for himself, Ms. Elliott, her son and dog, and incidental expenses for Ms. Elliott and her son, including premiums on their medical insurance coverage. Petitioner was the sole source *675 of support for Ms. Elliott and her son during 1978. In addition to assisting petitioner in his real estate investments, Ms. Elliott also ran the household occupied by herself and petitioner, including paying the maid, purchasing household items, and paying household expenses. Petitioner from time to time made cash payments to Ms. Elliott, in part to provide money for payment of miscellaneous household expenses. During 1978, Ms. Elliott took a six week trip to Europe. All of her expenses associated with the trip, as well as the expenses of her son who accompanied her during four of the six weeks, were paid by petitioner during 1978. Petitioner also accompanied Ms. Elliott during four weeks of the trip. On his 1978 return, and in arriving at his net rental income, petitioner claimed an ordinary deduction in the amount of $9,000 for compensation. This deduction related to the amount petitioner contended is the compensation he paid during the tax year 1978 to Ms. Elliott. Petitioner did not pay self-employment tax on the claimed $9,000 compensation, nor did he execute withholding forms or withhold employment taxes with respect to the claimed compensation. On or about June 17, 1980, Ms. *676 Elliott filed a 1978 income tax return reporting $9,000 as "other income." She did so pursuant to discussions with and advice from an accountant who had prepared petitioner's 1978 return. The accountant was aware that petitioner claimed on his 1978 return $9,000 as compensation having been paid to Ms. Elliott during 1978. Petitioner used a telephone in his residence extensively during 1978 in connection with the maintenance and management of his investment properties. The cost of the telephone attributable to its use in this regard was $230, the amount claimed as a deduction on petitioner's 1978 return. ULTIMATE FINDINGS OF FACT During the calendar year 1978, petitioner made payments amounting to $2,500 to or on behalf of Elissa Elliott which were ordinary and necessary expenses incurred in connection with the management, conservation, or maintenance of petitioner's properties held for the production of income.
OPINION Ordinary and necessary expenses paid to manage, conserve, or maintain a taxpayer's investment properties are deductible under section 212(2). Sec. 1.212-1(b), Income Tax Regs.; *677 Riss v. Commissioner,56 T.C. 388, 421 (1971). In addition, to being deductible under section 212, where expenses are incurred in connection with the ownership and operation of rental properties and a taxpayer's activities in connection with the properties are sufficiently systematic and continuous to amount to a trade or business (as were petitioner's activities in regard to his rental properties in this case), the expenses are deductible under section 162 as well. Noble v. Commissioner,7 T.C. 960, 964 (1946); Curphey v. Commissioner,73 T.C. 766, 773 (1980). Ordinary and necessary expenses within the meaning of these sections includes compensation paid by a taxpayer to another individual to manage, conserve, or maintain his rental or investment properties. Noble v. Commissioner,supra;Mallinckrodt v. Commissioner,2 T.C. 1128, 1148 (1943), affd. without discussion on this issue 146 F.2d 1 (8th Cir. 1945); Disney v. United States,267 F.Supp. 1 (C.D. Cal. 1967), affd. without discussion on this issue, *678 413 F.2d 783 (9th Cir. 1969). However, the deductibility of expenses under either sections 162 or 212 is subject to the limitations and exceptions contained in Part IX of Subchapter B of the Code, including section 262, which precludes a deduction for personal expenses, and section 263, which likewise precludes an ordinary deduction for capital expenditures. See Commissioner v. Idaho Power Company,418 U.S. 1, 17 (1974); Sharon v. Commissioner,66 T.C. 515, 522-523 (1976). Applying these rules, petitioner must show that the amount which he paid to Ms. Elliott and which is attributable to her efforts in regard to petitioner's investment properties does not run afoul of section 263 because her efforts are related to activities with regard to these properties which are capital in nature. Moreover, petitioner has the burden of proving that amounts were in fact paid to Ms. Elliott for her activities related to the investment properties and not for personal purposes. Several authorities bear upon this latter question. Section 1.162-7(a), Income Tax Regs., provides in part, "The test of deductibility in the case of compensation payments *679 is whether they are reasonable and are in fact payments purely for services." Several cases decided by this Court have dealt with the issue as to whether payments, claimed to constitute compensation, are in fact purely for services rendered or are in whole or in part made for personal, rather than business, reasons. See Lysek v. Commissioner,T.C. Memo. 1975-293; Roundtree v. Commissioner,T.C. Memo. 1980-117; Furmanski v. Commissioner,T.C. Memo. 1974-47; and Montpetit v. Commissioner,T.C. Memo. 1982-715. These cases establish that the question is purely one of fact, and no one circumstance controls the ultimate resolution of the issue. Specifically, the taxpayer's failure to withhold, pay social security tax, and meet filing and reporting requirements imposed upon employers by the Internal Revenue Code is not determinative as to the question of whether payments in fact constitute compensation, although these are relevant factors to consider. Likewise, the fact that payments are made indirectly by paying household expenses of the claimed employee, rather than being paid directly by cash or check, is not determinative. *680 See Montpetit v. Commissioner,supra.
Petitioner's evidence as to the compensation he paid Ms. Elliott during the tax year 1978 consists of copies of checks drawn upon his bank account paid to maintain and improve the personal residence in which he and Ms. Elliott were living; to buy food for members of the household (i.e., himself, Ms. Elliott, her child and dog); to pay travel expenses, including a trip to Europe for himself and Ms. Elliott and her son; and to purchase furniture and miscellaneous items for the personal residence. [3] Further, the evidence establishes that from time to time during the tax year 1978, petitioner made cash payments to Ms. Elliott. These payments were used by Ms. Elliott, at least to some extent, to pay household expenses of the personal residence and purchase food for all the members of the household. *681 Petitioner concedes that it would be improper to permit a deduction for the total amount of the checks submitted into evidence ($18,223). In this regard, petitioner acknowledges that a portion of these checks represent payments for household expenses and at least one-third of these expenses are attributable to petitioner himself. Petitioner does request that we include as deductible compensation the cash payments to Ms. Elliott, which petitioner contends amount to at least $5,250. However, petitioner fails to recognize in this regard that according to his own testimony, the cash payments he made to Ms. Elliott during 1978 were "for buying groceries, for buying toothpaste, etc., etc., cleaning lady, and that kind of thing." In other words, petitioner's testimony establishes that these cash payments totaling in excess of $5,000 were for household items, a portion of which would be attributable to petitioner and therefore are clearly nondeductible. Further, we reject petitioner's argument that checks evidencing payment for furniture and improvements for the Woodland Hills residence can be considered deductible compensation to Ms. Elliott.Whether or not petitioner would have bought *682 the Woodland Hills residence and furnished and improved it but for his arrangement with Ms. Elliott is totally beside the point. The fact is these payments were for improvements to and furniture for petitioner's own personal residence. Such payments are clearly nondeductible. A final category of expenses which petitioner contends should be included in the compensation paid to Ms. Elliott is based upon petitioner's own undocumented estimate that he paid for meals and personal items for Ms. Elliott and her son from time to time (which payments are not included in the checks submitted into evidence). Petitioner also relies in this regard upon statistics which petitioner argues show a reasonable cost of living for two persons during 1978 was at least $2,400. Thus, the evidence clearly does not show direct payments to Ms. Elliott made by petitioner as compensation during the year. Rather, in order for petitioner to prevail to any extent on this issue, the Court must conclude that some portion of the payments shown by the evidence were in fact to or for the benefit of Ms. Elliott. The Court has so concluded, and found as a fact that petitioner expended funds for the support of Ms. *683 Elliott and her son during 1978. The expenditures made by petitioner in this regard would include those for food, clothing, miscellaneous household expenses, and travel of Ms. Elliott and her son during the year. But that does not end the Court's inquiry. It must further be determined whether these payments were made for purposes that qualify for deduction under section 162 or 212(2). In this regard, applying the rules set forth above, only that portion of the payments made to or on behalf of Ms. Elliott which were ordinary and necessary and were made for the management, conservation, or maintenance of investment properties qualify for deduction. Any portion of the payments made to her (or on her behalf) by reason of the personal relationship between her and petitioner clearly do not qualify. Neither does any portion of payments which constitute capital expenditures qualify for deduction. We conclude, and have found as a fact, that petitioner and Ms. Elliott did in fact have an agreement that petitioner would support her, her son and dog, and that Ms. Elliott would, in part for that support, perform certain services as regards petitioner's investment and rental properties. *684 We accept petitioner's testimony and argument that his arrangement with Ms. Elliott did have a "business aspect" in this regard, but we cannot conclude that this represented the totality of the arrangement between petitioner and Ms. Elliott. Both petitioner and Ms. Elliott testified that their relationship was more than platonic during 1978 and Ms. Elliott analogized it to be a "boyfriend-girlfriend" situation. We believe it would be naive at best to conclude that every penny of the support provided by petitioner was made completely aside from his personal relationship with Ms. Elliott and solely for purposes related to his investment properties. Rather, we conclude that the personal relationship accounts for part of the expenditures on her behalf. But we also agree that the sum total of the support provided by petitioner for Ms. Elliott was not done purely based upon the personal relationship between the parties, but was in part based upon petitioner's peculiar need for someone to manage his extensive investment properties for a limited period of time. This conclusion is supported by the facts regarding the significant number of properties acquired and owned by petitioner during *685 the period in question, and the extensive activity engaged in by Ms. Elliott with respect to the acquisition and management of these properties. It is also reasonable to conclude that petitioner and Ms. Elliott entered into the arrangement in light of the fact that petitioner had a full time salaried position at the same time he was acquiring and managing numerous investment properties, such that he obviously had a need for a property manager. Even the conclusion that a portion of Ms. Elliott's support should be considered compensation paid to her for her activities with respect to the investment properties does not establish petitioner's entitlement to an ordinary deduction for that portion of the support so paid. Both petitioner's and Ms. Elliott's testimonies establish that a significant portion of her services with respect to the investment properties related to assisting petitioner in locating and acquiring these properties, as well as rehabilitating them after their acquisition. As stated by the Supreme Court in Woodward v. Commissioner,397 U.S. 572, 575 (1970): It has long been recognized, as a general matter, that costs incurred in the acquisition or *686 disposition of a capital asset are to be treated as capital expenditures. More specifically, the Supreme Court stated in Commissioner v. Idaho Power Company,418 U.S. 1, 13 (1974) "* * * when wages are paid in connection with the construction or acquisition of a capital asset, they must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired." * * * According to the uncontradicted testimony, a significant portion of Ms. Elliott's activities in regard to petitioner's investment properties involved her efforts in locating and assisting in the acquisition of the properties involved, including the Woodland Hills, Encino, Baylor Street, and Lake Shastina properties. In addition, the evidence establishes that Ms. Elliott was involved in looking for and considering the acquisition of properties for petitioner's investment program which were not actually purchased by petitioner. To the extent Ms. Elliott was paid by petitioner for her efforts regarding the acquisition of these properties, the payment is clearly a capital item and does not qualify for ordinary deduction. *687 Also required to be capitalized are expenses that go beyond "incidental repair" of real property and are incurred in connection with an overall plan for general rehabilitation, restoration, and improvement of property. Jones v. Commissioner,24 T.C. 563, 568 (1955); Section 1.263(a)-1, Income Tax Regs. Again, the uncontradicted testimony establishes that a portion of Ms. Elliott's efforts with regard to the properties acquired by petitioner were in connection with the renovation of the properties and therefore must be considered a capital expense.
In order to avoid this conclusion, petitioner argues first that to the extent a portion of Ms. Elliott's payment is considered attributable to capital improvements that would require him to "* * * fractionate the efforts of Ms. Elliott and assign them to various properties as 'capital improvements' * * *. This would require filing an amended return for each of the properties on which Ms. Elliott aided petitioner, for every tax year it was held!!!" The same argument, namely, that it would be more convenient for a taxpayer to simply write off expenses penses which under the statute and regulations should be capitalized, could *688 be made by every taxpayer who incurs capital expenses in connection with the ownership and management of investment or business properties.Nevertheless, the law (in effect during the tax years here in issue) clearly requires that such expenditures must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired or improved. In addition, petitioner appears to argue that all of the improvements done to his properties should be considered "cosmetic" such that they qualify for ordinary deduction. However, Ms. Elliott's testimony clearly establishes that a significant portion of the improvements with which she was involved amounted to complete rehabilitation, not simply incidental repairs.For example, with regard to the Woodland Hills property, she was asked and testified as follows: Q.: And would you describle the condition of that house in terms of its appearance at the time we moved in? A.: Well, in my opinion, it was in need of a great many things. It had a broken driveway. It had zilch landscaping. It needed new carpeting, new paint, both inside and out. It had acoustic ceilings which I did not do, but had directed that it be done, *689 to be removed. To put in beamed ceilings. I think that's basically it.It's not very attractive. [4]
Similarly, with respect to the Canoga Park property Ms. Elliott described the condition of the house when it was acquired as a "large chicken coop" and stated that she was involved, before the house was sold by petitioner, in having it recarpeted, repainted inside and out, and putting in new walls, kitchen cabinets, and new flooring. Petitioner's argument that the evidence supports the conclusion that all of the improvements made to the properties constituted no more than incidental repairs or "cosmetic matters" is clearly without merit. However, the evidence does establish that a portion of the activities engaged in by Ms. Elliott with respect to the *690 properties did amount to management, conservation, or maintenance of the properties within the meaning of section 212(2). In this respect, we accept Ms. Elliott's testimony that a portion of her time was spent handling tenants and their problems in connection with the numerous residences owned by petitioner and rented out during the period in question. In view of the significant number of properties which were actually rented or were held out for rental during the period and the evidence concerning their deteriorated condition, we have no doubt that Ms. Elliott was in fact involved in activities related to the management and maintenance of these properties, and that these activities were separate and distinct from those regarding the rehabilitation of certain properties. Having said all of this, we now reach the difficult problem of determining how much of the amount paid by petitioner for Ms. Elliott constitutes compensation for her activities which fall in the category of those which qualify for ordinary deduction.Respondent, not surprisingly, would simply have us conclude that petitioner has not sustained his burden of proof in this regard, and deny petitioner any deduction *691 whatsoever. On the other hand, petitioner simply glosses over the problem that a significant portion of Ms. Elliott's activities relate to nondeductible items. However, applying the rule of Cohan v. Commissioner,39 F.2d 640 (2nd Cir. 1930) we have made an approximation as to the appropriate amount and have concluded that that amount is $2,500. [5]
*692 Telephone Expenses
In the deficiency notice, respondent disallowed $180 of a claimed deduction for telephone expenses amounting to $230. At trial, respondent stipulated that $194.41 was deductible for this item. The testimony establishes that petitioner used the telephone in his residence during 1978 extensively for purposes relating to his investment and rental properties, and that the costs associated with this nonpersonal use amounted to at least $230. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment and on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. Because the evidence regarding these items consists of many cancelled checks and a very sketchy summary prepared by petitioner, the above categorization of what the checks represent is not all inclusive. The evidence is woefully inadequate to make any definitive breakdown as to the precise nature of all of the checks submitted into evidence.↩
4. In addition to being nondeductible under section 263, any compensation paid Ms. Elliott in regard to her activities with respect to the Woodland Hills property would be nondeductible under section 262 as a personal expense since that property was held and occupied by petitioner as his residence during the year in issue. Section 1.212-1(h), Income Tax Regs.; Riss v. Commissioner,56 T.C. 388, 422↩ (1971).
5. In reaching this conclusion, we are mindful of the rule that the statutory prohibitions of sections 262 and 263 regarding deductibility of personal and capital expenses take precedence over the allowance provisions of sections 162 and 212. See Commissioner v. Idaho Power Company,418 U.S. 1, 17 (1974); Sharon v. Commissioner,66 T.C. 515, 523 (1976). Without a doubt, this presents a close question as to whether petitioner has met his burden of proving that some portion of Ms. Elliott's claimed compensation is not personal or capital in nature. However, particularly in view of the objective evidence regarding the significant number of petitioner's rental properties and our evaluation of the credibility of the testimony of both petitioner and Ms. Elliott as to their agreement that she would be compensated for her activities in managing and maintaining these properties, we think an approximation of the amount paid her for her activities that do not run afoul of sections 262 and 263↩ can and should be made.